

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2003

# USA v. Sobratti

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4064

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Sobratti" (2003). *2003 Decisions.* Paper 341.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/341

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

———————

No. 02-4064

———————

UNITED STATES OF AMERICA,

<u>Appellant</u>

v.

CLINT SOBRATTI

———————

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 02-cr-00079)
District Judge: Hon. Raymond L. Finch, Chief Judge

———————

Argued April 29, 2003

BEFORE: ROTH, MC KEE and COWEN, <u>Circuit Judges</u>

(Filed          July 21, 2003                  )

Bruce Z. Marshack, Esq. (Argued)
Office of United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
USVI, 00820

      Counsel for Appellant

Jomo Meade, Esq. (Argued)
112 Queen Cross Street
Frederiksted, St. Croix
USVI, 00840

Counsel for Appellee

OPINION

COWEN, Circuit Judge.

The United States of America and the Government of the Virgin Islands
(collectively "government") appeal from the order of the District Court of the Virgin
Islands granting Clint Sobratti's motion to suppress evidence. We will reverse.

I.

Sobratti was arrested on the evening of June 2, 2002 and indicted for being a felon
in possession of a firearm in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 924(a)(2),
unauthorized possession of a firearm in violation of title 14, section 2253(a) of the Virgin
Islands Code, and the knowing use of force, threat, and intimidation against a potential
witness in an attempt to influence or prevent testimony contrary to title 14, section
1510(a) of the Virgin Islands Code. Three police officers, Terrence Aaron, Cecil Gumbs,
and Herman Lynch, were patrolling the area of Glimpses Nightclub in a police vehicle.
Lynch indicated that they went to this nightclub due to past problems of gun fire and drug

2

use on the weekends.[1] Lynch testified that, as they drove into the well-lit parking lot, he noticed the apparent smell of burning marijuana coming from the immediate area around a Toyota Celica. He saw three individuals near this car. The two other officers confirmed this account of the smell of marijuana and the Celica.

Parking behind the car, the three police officers approached the Celica to investigate. Lynch went to Jeffrey Ramos, who was leaning against the rear part of the driver's side of the Celica and facing away from the officers. Ramos turned back and looked in Lynch's direction. Lynch testified that he heard Ramos say something.[2] Gumbs and Aaron also stated that they heard Ramos speaking to Sobratti, who was standing next to an open door on the passenger's side of the Celica. According to Lynch, Ramos tossed what appeared to be a marijuana cigarette over the front of the car. Ramos was detained, and Lynch recovered the tossed cigarette, which was still lit. A field test indicated the presence of marijuana.

According to Gumbs, Sobratti was standing next to an open door on the passenger's side of the Celica with one hand on top of the roof and his other hand over

---

[1] Gumbs testified on cross-examination that they merely "happened to be in that area." App. at 52.

[2] Lynch's testimony regarding a statement by Ramos was, at the very least, unclear. Although Lynch testified that Ramos "said something," App. at 26, he then indicated that he did not know whether Ramos actually spoke. Chief Judge Finch eventually inquired whether he "saw Ramos speak to Sobratti." *Id.* at 37. Lynch stated, "He [Ramos] turned around and some motions were made by Sobratti. So I figured he probably said something, and I went straight to him, so." *Id.*

the door. Facing away from the approaching officers, he was wearing an untucked baseball jersey and speaking with the woman standing on the opposite side of the opened door. After Ramos's statement, Sobratti looked to Ramos and then turned in the direction of the police vehicle. Gumbs stated that Sobratti lifted up the jersey and pulled a dark or black object from his waist.[3] According to Gumbs, Sobratti then reached into the Celica and placed the object in the car. Gumbs was concerned about this conduct due to a fear, particularly given the secluded nature of the parking lot and the nightclub's reputation for violence, of a weapon. He stated that he decided to investigate the object because of Sobratti's hurried manner and "the fact that there was a high odor of marijuana at the time." App. at 56.

Sobratti then tried to close the car door. Gumbs did not want the door to be closed because of the object. According to Gumbs:

> . . . As I held the car door and I pulled it back, and I started to -- he tried to close. He was trying to close the door, and I was trying to keep him from closing the door.
>
> So we had a brief struggle to keep the car from closing. When [the woman] saw, she immediately turned around and walked away.

App. at 45-46. Aaron witnessed this struggle and went to assist Gumbs. After succeeding in keeping the car door open, Gumbs pushed Sobratti back and looked inside the car without ever actually entering the vehicle. He testified that he first saw marijuana

---

[3] The defense introduced the police report filed by Gumbs in which he described the placement of the object without stating that it looked dark or black at the time.

4

in the console next to the front seat. He then spotted a gun on the floor on the passenger's side of the vehicle. He announced the police code for the discovery of a firearm and handcuffed Sobratti. Aaron also looked into the car and observed the gun, with its handle pointing up and the nozzle facing toward the front of the vehicle, on the floor next to the shift mechanism.

On September 16, 2002, Sobratti moved to suppress all of the evidence obtained as a result of his seizure and the search of the Celica. The District Court held an evidentiary hearing on October 9, 2002. Lynch, Gumbs, and Aaron appeared on behalf of the government. Brandy Amber Pereira, Demaris Carroll, and Detective Terrence Desormeaux testified at the behest of the defense.[4] The District Court granted the motion to suppress in an order entered on October 10, 2002. In an accompanying memorandum opinion, the District Court found that a search occurred when Gumbs prevented Sobratti from closing the car door and looked into the Celica. It further held that the police lacked the requisite probable cause to conduct this search. On October 16, 2002, the government moved for reconsideration based in part on the claim that Sobratti lacked standing to

---

[4] Pereira and Carroll provided testimony that differed in several respects from the accounts of the officers. For instance, Pereira insisted that the Celica doors were closed. Carroll, who claimed to be the woman standing next to Sobratti, indicated that Sobratti was wearing a T-shirt. She further testified that she did not see him remove any object from his waist or open the car door to place an object inside the vehicle. The District Court as well as the parties generally accept the police officers' accounts of the June 2, 2002 incident.

Desormeaux testified that the Celica was registered to Bernette Tutein, the brother of Ramos, and that Tutein informed Gumbs he had loaned this car to his brother.

5

challenge the search of the Celica. The District Court denied this motion in an order dated October 30, 2002, providing its reasons in an accompanying memorandum opinion. The government filed a timely notice of appeal.

II.

The government argues that the acts of restraining Sobratti were justified under *Terry v. Ohio*, 392 U.S. 1 (1967), because of the reasonable suspicion of criminal conduct and a threat to personal safety from an apparent firearm. According to the government, it was then constitutionally permissible after the struggle over the car door to look into the Celica and seize the gun and marijuana in plain view. Alternatively, the government contends that Sobratti lacked standing. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731. We review the District Court's factual findings for clear error but exercise plenary review over its legal determinations. *See, e.g., United States v. Coggin*, 986 F.2d 651, 654 (3d Cir. 1993).

The government's proffered framework of analysis is not necessarily the most appropriate in these circumstances. Sobratti, however, relies on the *Terry* standard to argue that there was no reasonable suspicion of criminal activity on his part and that Gumbs acted on a constitutionally insufficient "hunch" that the object placed in the car was a weapon. We likewise apply this approach. We conclude that the conduct of the police officers here satisfied *Terry*.[5]

---

[5] We therefore need not consider the government's alternative standing assertions.

6

It is well established under *Terry* that a police officer is permitted to stop an individual for purposes of investigation and then perform a limited search for weapons to ensure the safety of the officer and others. A "'brief investigatory stop" is appropriate when "'the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (quoting *Illinois v. Wardlow*, 528 U.S. 123, 123 (2000)), *cert. denied*, 123 S. Ct. 2104 (2003). A limited weapons search is then justified when the officer "has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27; *see also, e.g., Robertson*, 305 F.3d at 170; *Leveto v. Lapina*, 258 F.3d 156, 164 (3d Cir. 2001). Such a search may extend beyond the person of the suspect to the area under his immediate control, including a passenger compartment of an automobile. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) ("These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (quoting *Terry*, 392 U.S. at 21)).

It appears that Gumbs was justified in seizing Sobratti by preventing him from closing the door and pushing him away from the car. There were specific circumstances

7

raising the well-founded suspicion of Sobratti's involvement in criminal activity and the threat of a deadly weapon. The officers smelled marijuana coming from the area of the Celica, which was located in a parking lot known for the use of drugs and gun fire. Sobratti did not remove the object from his waist until after Ramos spoke to him and he looked back in the direction of the police. Contrary to Sobratti's suggestion, these actions, taken together with his placement of the object in the car and his attempt to close the car door, constituted at the very least "nervous or . . . evasive behavior." Sobratti's Br. at 15.[6] We therefore must conclude that the police possessed reasonable suspicion of criminal conduct and had cause to believe that they were dealing with an armed and dangerous person. Any other result fails to acknowledge the dangers and uncertainties faced by police officers confronting multiple individuals acting in a very suspicious fashion and standing around a car in a secluded area known for criminal and violent behavior. Having properly secured both Sobratti and the car door, Gumbs was entitled to look into the car and seize the gun and the marijuana in plain view. We accordingly find that the District Court erred in suppressing this evidence.

III.

---

[6] Sobratti argues that any investigation should have ceased once Ramos was detained and the discarded marijuana cigarette was recovered. Although Gumbs clearly testified that the gun was found before this recovery, Lynch did state that he heard the warning about the weapon after the retrieval of the cigarette. Even assuming that the marijuana cigarette was found before the confrontation with Sobratti, the overall circumstances, including Ramos's comment, justified the further investigation of Sobratti.

8

For the foregoing reasons, the judgment of the District Court entered on October, 10, 2002 will be reversed. This matter will be remanded to the District Court for further proceedings consistent with this opinion.

_____

TO THE CLERK:

Please file the foregoing opinion.

/s/Robert E. Cowen

_____

United States Circuit Judge