STATE of Indiana, Appellant–Plaintiff,

v.

William A. HOLLEY, Appellee–
Defendant.

No. 02A03–0808–CR–406.

Court of Appeals of Indiana.

Dec. 23, 2008.

Rehearing Denied March 30, 2009.

Steve Carter, Attorney General of Indiana Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Quinton L. Ellis, Fort Wayne, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

William A. Holley was charged with possession of marijuana[1] as a Class A misdemeanor. Holley filed a motion to suppress the evidence obtained during a search of his vehicle. The trial court granted the motion, which effectively precluded further prosecution. Pursuant to Indiana Code section 35–38–4–2(5), the State appeals raising the following issue; whether the trial court erred as a matter of law in granting Holley's motion to suppress evidence seized during a warrantless search conducted after the police officer smelled raw marijuana in the vehicle and on Holley's person.

We affirm.

1. *See* Ind.Code § 35–48–4–11.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment are as follows. In the early morning hours of February 15, 2008, Fort Wayne Police Officer David Boles[2] observed a 1992 Ford Explorer traveling nine miles per hour over the posted speed limit and activated his lights in order to initiate a traffic stop. The vehicle slowed down and continued southbound on the crowded two-lane road. 7V. at 25. Officer Boles followed the Explorer for a short distance and then activated his emergency siren. When the driver, later identified as Holley, did not immediately stop, Officer Boles radioed for assistance.

As soon as Holley stopped, Officer Boles parked his marked squad car approximately ten feet behind the Explorer. On the alert because Holley had not pulled over when first instructed to do so, Officer Boles waited for other officers to appear at the scene. *Id.* at 7. Once the officers arrived, Officer Boles remained in his squad car and ordered Holley and his passenger to get out of the vehicle and "step back towards the sound of [his] voice." *Id.* at 8–9. Holley was not charged with any resisting-related offense; however, for officer safety, the two suspects were handcuffed and placed in the back of separate squad cars. *Id.* at 9, 10, 25.

During the suppression hearing, the trial court received the following evidence. Officer Boles testified that he and a second officer, Officer McEachem, detected the smell of raw marijuana emanating from Holley and his passenger while in their presence. *Id.* at 9–11. The officers, however, did not search the suspects for the presence of marijuana. Instead, Officer Boles approached the Explorer to "secure

2. Although the transcript uses the spelling "Bowles," the correct spelling is "Boles." *Appellant's App.* at 3, 5, 9, 17, 19.

it." *Appellant's App.* at 17. Upon reaching the Explorer, Officer Boles detected the smell of raw marijuana emanating from the passenger compartment and initiated a search. *Id.;* Tr. at 12.

Officer Boles testified that he "found small, green, leafy substance [sic] in the cup holders and between the center console, and also there was one (1) on the floor beside the center console, a small, green, leafy substance."[3] Tr. at 13. The officers did not perform any tests to determine whether the substance was marijuana because they did not have a field test kit. *Id.* Officer Boles did not hold the substance up to his nose, but testified that, from his experience, the substance matched the consistency of marijuana. *Id.* He further testified that, during this search, he noticed gouges and scrapes near a "little indent where you could pop off the panel" that covered the window and lock mechanisms on the passenger side door. *Id.* at 15. When cross-examined as to whether the marks were unusual for a 1992 Explorer, Officer Boles admitted that he could not tell when the scratches had been made. *Id.* at 34. Using the tip of his handcuff keys, Officer Boles popped off the passenger door control panel and found a large amount of cash.[4] *Id.* at 34; *Appellant's App.* at 18.

Detective Mark Gerardot, a detective with the Vice and Narcotics Division of the Fort Wayne Police Department, testified that, when he arrived at the scene, he joined an "already on-going" search of Holley's vehicle. *Tr.* at 46. As part of that search, Detective Gerardot lifted up a similar panel on the driver's-side door and found an additional 2.6 grams of loose marijuana. *Id.* at 51–52; *Appellant's App.* at 11.

Holley was arrested and charged with Class A misdemeanor possession of marijuana. Prior to trial, he filed a motion to suppress the evidence found in the vehicle. The trial court held a hearing, after which, without comment, it summarily granted Holley's motion to suppress. *Tr.* at 61. Two days later, the State dismissed its case against Holley. The State now appeals.

## DISCUSSION AND DECISION

The State contends that the trial court erred in suppressing the evidence seized from Holley's vehicle on the basis that the police committed an illegal search under either the Fourth Amendment to the United States Constitution or Article 1, section 11 of the Indiana Constitution. *Appellant's App.* at 15. At the suppression hearing, the State had the burden of demonstrating the constitutionality of the measures it used to seize evidence as the result of a warrantless search. *State v. Lucas,* 859 N.E.2d 1244, 1248, 1251 (Ind. Ct.App.2007), *trans. denied.* Here, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *Id.* at 1248. This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* We will not reweigh the evidence or judge witness credibility. *Id.*

The trial court did not enter special findings of fact in support of its ruling. Thus, we do not have the benefit of the trial court's reasoning behind its decision

---

3. In the Affidavit for Probable Cause, Officer Boles stated, "I saw two small green leaves that appeared to be marijuana." *Appellant's App.* at 11.

4. It was later determined that the cash in the door was valued at $7,900. After Holley was arrested and searched, the police found an additional $746 on Holley's person.

to suppress the evidence. However, we are mindful of a trial court's unique position to judge the credibility of the witnesses and evidence before it. Here, for the evidence to be admissible, the State had the burden of proving that the search was constitutional under *both* the federal and state constitutions.

 In general, the Fourth Amendment prohibits warrantless searches and seizures. *Cheatham v. State,* 819 N.E.2d 71, 74 (Ind.Ct.App.2004). " 'When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search.' " *Id.* (quoting *Ratliff v. State,* 770 N.E.2d 807, 809 (Ind.2002)). The automobile exception is just such an exception to the Fourth Amendment warrant requirement and is based on the inherent mobility and reduced expectation of privacy of an automobile. *Masterson v. State,* 843 N.E.2d 1001, 1004 (Ind.Ct.App.2006), *trans. denied; see Myers v. State,* 839 N.E.2d 1146, 1152 (Ind.2005).

 Article 1, section 11 of the Indiana Constitution provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure." Under Article 1, section 11 of the Indiana Constitution, the search and seizure analysis is slightly different than that under the Fourth Amendment. While the Fourth Amendment focuses on a defendant's reasonable expectation of privacy, our Supreme Court has noted that "the purpose of Article one, section eleven is to protect from unreasonable police activity, those areas of life that Hoosiers regard as private." *Brown v. State,* 653 N.E.2d 77, 79 (Ind. 1995). Our Supreme Court has recognized, "Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion." *Id.* at 80. In determining whether police behavior was reasonable under section 11, courts "must consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures." *Taylor v. State,* 842 N.E.2d 327, 334 (Ind.2006); *see Buckley v. State,* 886 N.E.2d 10, 14 (Ind.Ct.App.2008).

 Under both the federal and the Indiana constitutions, police must have probable cause to believe that the warrantless search of a vehicle will uncover evidence of crime. *Maryland v. Dyson,* 527 U.S. 465, 466, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999); *Kenner v. State,* 703 N.E.2d 1122, 1125 (Ind.Ct.App.1999). "Probable cause to search exists where the facts and circumstances within the knowledge of the officer making the search, based on reasonably trustworthy information, are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *State v. Hawkins,* 766 N.E.2d 749, 751 (Ind.Ct.App.2002).

The issue before the court in *Hawkins* was whether the odor of burnt marijuana was sufficient to constitute probable cause when detected by a trained and experienced police officer. The court held that it was sufficient.

Here, the State asks that we apply the same reasoning to reverse the trial court's suppression order by holding that the odor of raw marijuana should be treated in the same way. We perceive our burden as being much broader. In *Hawkins,* there was no issue as to the qualifications of the police officer to determine the detected odor because the defendant stipulated to the facts in the probable cause affidavit that the officer knew through his training and experience that the odor was burnt marijuana. There was no such stipulation

in this case, and the qualifications of the officers were in issue.

Here, there were three officers identified as being at the scene of the search—Officer Boles, Officer McEachem, and Detective Gerardot. Detective Gerardot was not on the scene when the search of Holley's vehicle commenced, and Officer McEachem did not testify. Thus, probable cause had to be determined through the qualifications of Officer Boles. Officer Boles testified that he had attended one seminar where he was shown what raw marijuana looked like. There was no evidence that Officer Boles had any formal training regarding the detection of raw marijuana by odor or in distinguishing it from other substances. While there was evidence that he had encountered marijuana during the course of his duties, there was no evidence that he was qualified to know its odor or able to distinguish its odor from that of other substances.

On the basis of this evidence, we cannot say that the State sustained its burden of proof justifying the warrantless search of Holley's vehicle. The evidence of Officer Boles's qualifications to identify the presence of raw marijuana by odor alone was not without conflict and is insufficient to overturn the negative judgment of the trial court. While the testimony of a police officer shown to be qualified by training or experience to detect the odor of raw marijuana may be sufficient in a particular case to demonstrate the existence of probable cause as a matter of law, the State failed to make such a showing here.

Affirmed.

VAIDIK, J., and CRONE, J., concur.