Lindell **PATTERSON**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 49A05–1102–CR–38.

Court of Appeals of Indiana.

Nov. 17, 2011.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Lindell Patterson ("Patterson") was convicted in Marion Superior Court of Class A misdemeanor possession of marijuana. On appeal, Patterson argues that the trial court abused its discretion in admitting into evidence marijuana obtained as a result of an unlawful search and seizure. We affirm.

### Facts and Procedural History

On March 1, 2010, Officer Debra Dotson ("Officer Dotson") of the Indianapolis Metropolitan Police Department was conduct-

ing patrol duties in the vicinity of 10th Street and Tibbs Avenue in Indianapolis. At around midnight, after observing a vehicle turn right without using a turn signal, Officer Dotson initiated a traffic stop. When Officer Dotson approached the car, the driver, who later identified himself as Patterson, opened the driver's side door rather than rolling the window down because the window was apparently not working. When Patterson did so, Officer Dotson detected what she believed to be the odor of burnt marijuana emanating from the vehicle. Officer Dotson then asked for Patterson's driver's license and registration. Patterson produced a valid Indiana driver's license, but he told Officer Dotson that he did not have a registration card for the vehicle. Officer Dotson took Patterson's driver's license and returned to her police vehicle, where she called for backup because she intended to search Patterson's car based on the odor of marijuana emanating from the vehicle.

When backup arrived, Officer Dotson again approached Patterson and asked him if there was any marijuana in the car or on his person. After Patterson responded that there was not, Officer Dotson asked him to step out of the vehicle. Patterson complied, and Officer Dotson performed a pat-down search of Patterson's person, ostensibly for officer safety. While conducting the pat-down, Officer Dotson felt an object located in Patterson's right front pants pocket, which she immediately recognized as "narcotics." Tr. p. 13. Officer Dotson then reached into Patterson's pocket and retrieved the item, a small plastic baggie containing a green, leafy substance that later testing revealed to be marijuana. No additional contraband was discovered during a subsequent search of Patterson's car. Officer Dotson seized the marijuana she found on Patterson's person, but chose not

to arrest Patterson, instead issuing him a criminal summons.

As a result of this incident, the State charged Patterson with Class A misdemeanor possession of marijuana. Patterson thereafter moved to suppress the marijuana, alleging that it was obtained as a result of an unlawful search and seizure under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. At the suppression hearing, Officer Dotson testified that she conducted the pat-down for officer safety because the traffic stop took place in a "high crime area" that is well-known for high levels of prostitution, drug activity, and gun violence. Tr. p. 10. Officer Dotson testified further that she was concerned about the presence of weapons due to the smell of marijuana because, in her experience as a law enforcement officer, "guns go hand in hand with drugs." Tr. p. 16. The trial court denied Patterson's motion to suppress and, following a bench trial, found him guilty as charged. Patterson now appeals.

## Standard of Review

Patterson contends that the trial court erred in denying his motion to suppress the marijuana. Because Patterson appeals following his conviction and is not appealing the trial court's interlocutory order denying his motion to suppress, the question is properly framed as whether the trial court abused its discretion in admitting the marijuana into evidence. *See Parish v. State*, 936 N.E.2d 346, 349 (Ind. Ct.App.2010), *trans. denied.* The admission of evidence is within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *Rogers v. State*, 897 N.E.2d 955, 959 (Ind.Ct. App.2008), *trans. denied.* A trial court abuses its discretion if its decision is clearly against the logic and the effect of the facts and circumstances before the court,

or if the court has misinterpreted the law. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling, but we also consider the uncontested evidence favorable to the defendant. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied.*

## Discussion and Decision

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the government. *Malone v. State*, 882 N.E.2d 784, 786 (Ind.Ct.App.2008). "Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind.2006) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). When a search is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.; Malone*, 882 N.E.2d at 786.

One such exception was established in *Terry v. Ohio*, in which the United States Supreme Court held that a police officer may briefly detain a person for investigatory purposes if, based on specific and articulable facts together with reasonable inferences drawn therefrom, an ordinarily prudent person would reasonably suspect that criminal activity was afoot. 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Howard v. State*, 862 N.E.2d 1208, 1210 (Ind.Ct.App.2007). Reasonable suspicion is determined on a case-by-case basis by examining the totality of the circumstances. *Id.* In addition to detainment, *Terry* permits a police officer to conduct a limited search of the individual's outer clothing for weapons if the officer

reasonably believes that the individual is armed and dangerous. *Id.* An officer's authority to perform such a pat-down search of a detained individual during a *Terry* stop is dependent upon the nature and extent of the officer's particularized concern for his or her safety. *Rybolt v. State*, 770 N.E.2d 935, 938 (Ind.Ct.App. 2002), *trans. denied.*

As an initial matter, we note that Patterson does not challenge the initial traffic stop. Indeed, it is well settled that a police officer may stop a vehicle upon observing a minor traffic violation. *Reinhart v. State*, 930 N.E.2d 42, 46 (Ind. Ct.App.2010). Here, Officer Dotson testified that she observed Patterson make a right turn without using his turn signal, in violation of Indiana's traffic laws. *See* Ind. Code § 9–21–8–25 (2004) (providing that a driver must signal before turning right or left). The initial traffic stop was therefore valid. On appeal, Patterson challenges the validity of the pat-down search of his person. Specifically, Patterson argues that the pat-down search was unlawful because Officer Dotson did not have reasonable suspicion to believe that Patterson was armed and dangerous.[1]

First, Patterson argues that Officer Dotson's testimony that she detected the odor of burnt marijuana emanating from Patterson's vehicle cannot support a finding of reasonable suspicion because the record does not establish that Officer Dotson had sufficient training and experience to recognize the odor of burnt marijuana.[2] In support of this argument, Patterson notes that Officer Dotson testified that "[i]mmediately as soon as [Patterson] open[ed] up the door, with my law enforcement training and experience I detected a smell I believed to be burnt marijuana." Tr. p. 12. Although Officer Dotson testified that

---

1. Patterson also appears to argue that Officer Dotson lacked probable cause to detain him while she waited for backup to arrive. *See* Appellant's Br. at 7. However, we note that Patterson did not argue that he was unlawfully detained at the suppression hearing or at trial. Rather, he argued only that he was subjected to an unlawful pat-down search and that the seizure of the marijuana from his pocket was not justified under the plain feel doctrine. Accordingly, Patterson has waived appellate review of any argument that his encounter with Officer Dotson resulted in an unlawful seizure of his person. *See Whitfield v. State*, 699 N.E.2d 666, 669 (Ind.Ct.App. 1998) (noting that arguments raised for the first time on appeal are waived and will not be considered), *trans. denied.* Waiver notwithstanding, we note that Officer Dotson did not need probable cause to briefly detain Patterson for investigatory purposes beyond the scope of the initial traffic stop; rather, Officer Dotson could extend the stop if something occurred during the stop that caused her to develop reasonable suspicion that criminal activity was afoot. *See Thayer v. State*, 904 N.E.2d 706, 709 (Ind.Ct.App.2009). Due to the smell of burnt marijuana emanating from Patterson's vehicle, Officer Dotson had rea-sonable suspicion sufficient to justify a further investigatory detention beyond the scope of the initial traffic stop. *See Kenner v. State*, 703 N.E.2d 1122, 1127 (Ind.Ct.App.1999), *trans. denied, abrogated on other grounds. Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005). Patterson makes no argument that his detention was too long in duration to be justified as an investigatory stop. *See id.* at 1128.

2. The State alleges that this argument is waived because Patterson did not raise the issue of Officer Dotson's qualifications to recognize the smell of burnt marijuana before the trial court. In his appellant's brief, Patterson states that the issue was not raised below; however, our review of the record reveals that Patterson did, in fact, raise the issue of whether Officer Dotson had sufficient training and experience to identify the odor of marijuana at the suppression hearing, and Patterson objected to the admission of the marijuana at trial on the same basis asserted in his motion to suppress. Tr. pp. 30–31, 35–36, 49. Accordingly, we conclude that Patterson properly preserved his claim regarding Officer Dotson's qualifications to recognize the odor of marijuana and proceed to address it on the merits.

she had completed training at two separate law enforcement academies, that she received ongoing training twice a year, and that she had fourteen years of law enforcement experience, Patterson accurately points out that the record contains no evidence detailing the specific training Officer Dotson has received that would make her qualified to identify the smell of marijuana. Patterson claims that such evidence was required in order to establish reasonable suspicion. We disagree.

In support of his argument regarding Officer Dotson's qualifications to recognize the smell of burnt marijuana, Patterson cites *State v. Holley*, 899 N.E.2d 31 (Ind. Ct.App.2008), *trans. denied*. In *Holley*, a police officer detected the smell of raw marijuana emanating from the passenger compartment of Holley's vehicle during a traffic stop and, on that basis, conducted a warrantless search of the vehicle, during which the officer discovered marijuana. *Id.* at 32–33. As a result, Holley was charged with Class A misdemeanor possession of marijuana. *Id.* at 33. Prior to trial, Holley filed a motion to suppress the marijuana found in the vehicle, which the trial court granted without comment. *Id.* After dismissing the charge against Holley, the State appealed the trial court's ruling on the motion to suppress. *Id.*

On appeal, the State relied on *State v. Hawkins*, 766 N.E.2d 749, 752 (Ind.Ct. App.2002), *trans. denied*, for the proposition that the odor of marijuana emanating from the vehicle, when detected by a trained and experienced police officer, constitutes probable cause to conduct a search of the vehicle. *Holley*, 899 N.E.2d at 34. The *Holley* court distinguished *Hawkins*, noting that no issue regarding the officer's qualifications to identify the smell of marijuana was presented in that case because the defendant stipulated to the facts alleged in the probable cause affidavit that

the officer knew through his training and experience that the odor was burnt marijuana, *Id.* at 34–35. But in *Holley*, there was no such stipulation, and the officer's qualifications were therefore in issue. *Id.*

The court went on to note that the officer testified that he had attended one seminar where he was shown what raw marijuana looked like; however, there was no evidence that the officer had any training regarding the detection of raw marijuana by odor. *Id.* at 35. The court reasoned that "[w]hile there was evidence that [the officer] had encountered marijuana during the course of his duties, there was no evidence that he was qualified to know its odor or able to distinguish its odor from that of other substances." *Id.* On that basis, the court concluded that the State had not met its burden of proof to justify the warrantless search of Holley's vehicle. *Id.*

We believe that *Holley* is distinguishable from the case at hand for three reasons. First, because of the procedural posture of the case, the *Holley* court applied a different standard of review than that applicable here, and that standard required the court to take a different view of the evidence of record. Because the State was appealing from a negative judgment, it bore the burden of establishing that the trial court's suppression of the marijuana was contrary to law, and the court would only reverse if the evidence was without conflict and all reasonable inferences led to a conclusion opposite that reached by the trial court. *Id.* at 33–34. In *Holley*, the court concluded that the State had not met that burden. *Id.* at 35. But here, Patterson is appealing the trial court's ruling on the admissibility of evidence following his conviction for Class A misdemeanor possession of marijuana. Thus, on appeal, it is Patterson who bears the burden of establishing that the trial

court abused its discretion in admitting the marijuana, and in making this determination, we must look to the evidence most favorable to the trial court's ruling, along with any uncontested evidence favorable to Patterson.

■ Second, in *Holley*, the State was required to establish that the police had probable cause to search Holley's vehicle. *Id.* at 34 (noting that the "automobile exception" allows a warrantless search of a vehicle when police have probable cause to believe that the search will uncover evidence of a crime). But as we have explained, Officer Dotson only needed reasonable suspicion that Patterson was armed to justify a limited pat-down search of Patterson's outer clothing. *See Rybolt,* 770 N.E.2d at 938. As this court has previously noted,

> Reasonable suspicion is a less demanding standard than probable cause, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Washburn v. State,* 868 N.E.2d 594, 601 (Ind.Ct.App.2007) (citing *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Thus, even if Officer Dotson's statement that she detected an odor that, through her training and experience, she believed to be burnt marijuana was not sufficiently reliable to establish probable cause to search the vehicle, this does not foreclose the possibility that it was sufficient to support a finding of reasonable suspicion.

Finally, in this case, Officer Dotson testified that "[i]mmediately as soon as [Patterson] open[ed] up the door, with my law enforcement training and experience I detected a smell I believed to be burnt marijuana." Tr. p. 12. In *Holley*, on the other hand, the officer simply testified "that he had attended one seminar where he was shown what raw marijuana looked like," and "[w]hile there was evidence that he had encountered marijuana during the course of his duties, there was no evidence that he was qualified to know its odor or able to distinguish its odor from that of other substances." 899 N.E.2d at 35. Thus, unlike Officer Dotson, it appears that the officer in *Holley* did not testify that he was able to recognize the odor of marijuana as a result of his training and experience.

Here, Officer Dotson testified that she had completed training at two separate law enforcement academies, that she attends ongoing training twice a year, and that she has fourteen years of experience in law enforcement. Officer Dotson testified further that she was able to recognize the odor emanating from Patterson's vehicle as that of burnt marijuana as a result of her law enforcement training and experience. Based on this testimony, it was reasonable for the trial court to infer that Officer Dotson was qualified to identify the odor of burnt marijuana. While additional testimony concerning the specific training Officer Dotson received in identifying marijuana by odor may have been helpful, Patterson was free to cross-examine Officer Dotson on that point. In essence, Patterson's argument is a request to reweigh the evidence, which we will not do in light of our standard of review. For all of these reasons, we conclude that the State sufficiently established that Officer Dotson was qualified to recognize the odor of burnt marijuana.

■ Having concluded that Officer Dotson was sufficiently qualified to identify the odor of marijuana, we turn now to whether the evidence supports a determi-

nation that Officer Dotson held a reasonable belief that Patterson was armed and dangerous at the time of the pat-down search. A generalized suspicion that an individual presents a threat to an officer's safety is insufficient to authorize a pat-down search; rather, there must exist articulable facts to support an officer's reasonable belief that the particular individual is armed and dangerous. *Tumblin v. State*, 736 N.E.2d 317, 322 (Ind.Ct.App. 2000), *trans. denied.* In determining whether an officer acted reasonably under the circumstances, we consider the specific, reasonable inferences that the officer is entitled to draw from the facts in light of his or her experience. *Id.*

In support of his argument that Officer Dotson lacked the requisite reasonable belief that Patterson was armed, Patterson cites *Rybolt*, 770 N.E.2d at 935.[3] In *Rybolt*, an officer responded to a dispatch that a vehicle was stopped in a crosswalk at an intersection. *Id.* at 937. When the officer arrived, the driver of the vehicle was unconscious, and the officer had to wake him. *Id.* Although the driver was cooperative and made no furtive or nervous gestures, the officer performed a pat-down search because he was the only officer present and based on his belief that "any person who commits a drug offense is likely armed." *Id.* at 937, 941. In reaching the conclusion that the pat-down search was unreasonable under the circumstances, we noted that the driver was

"completely cooperative" and that if the officer suspected that the driver was under the influence of drugs, he could have conducted field sobriety tests and, if the driver failed such tests, the officer would have had probable cause to arrest and search him. *Id.* at 941.

We believe that *Rybolt* is distinguishable from the facts of the case at hand. Here, Officer Dotson's search was not based solely on her belief that "guns go hand in hand with drugs." Tr. p. 16. Officer Dotson also testified that the traffic stop took place late at night in a "high crime area" that is well known for high levels of prostitution, drug activity, and gun violence. Tr. p. 10. *See Adams v. Williams*, 407 U.S. 143, 147–48, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (noting that subject's presence in a high-crime area late at night contributed to officer's reasonable fear for his safety); *Bridgewater v. State*, 793 N.E.2d 1097, 1100 (Ind.Ct.App.2003) (noting that presence in a high-crime neighborhood may be considered as a factor in the totality of the circumstances facing an officer at the time of a stop), *trans. denied.* And we did not hold in *Rybolt* that evidence of drug involvement is irrelevant to a determination of whether a pat-down search is supported by reasonable suspicion. Indeed, courts have often considered evidence of drug involvement as part of the totality of circumstances contributing to an officer's reasonable belief that a subject is armed and dangerous. *See Adams*, 407 U.S. at

---

**3.** The other cases Patterson cites in support of his argument that the pat-down was not justified by a reasonable concern for officer safety are factually inapposite. *See Mitchell v. State,* 745 N.E.2d 775, 781–82 (Ind.2001) (holding that pat-down was not authorized based solely on routine traffic stop and defendant's nervousness); *Howard v. State,* 862 N.E.2d 1208, 1211–12 (Ind.Ct.App.2007) (holding that pat-down was not authorized when officer, who stopped vehicle based on belief that it was being driven by a suspect who had previously

fled from officers, immediately recognized that Howard was not the suspect and officer knew of Howard's previous arrests, but there was no evidence that prior arrests involved threats to officer safety); *Jett v. State,* 716 N.E.2d 69, 70–71 (Ind.Ct.App.1999) (holding that pat-down was not authorized based solely on defendant's actions in exiting the vehicle immediately after being pulled over when defendant immediately complied with officer's order to get back into vehicle).

147–48, 92 S.Ct. 1921 (noting that informant's tip that subject was carrying narcotics contributed to officer's reasonable fear for his safety); *United States v. Sobratti*, 70 Fed.Appx. 73, 76–77 (3d Cir. 2003) (considering the smell of marijuana and presence in an area "known for the use of drugs and gun fire" as factors contributing to reasonable suspicion that suspect was armed and dangerous); *United States v. Brown*, 188 F.3d 860, 865 (7th Cir.1999) (reasoning that indications that a defendant was involved with drugs, including FBI surveillance for suspected drug activity and the odor of marijuana smoke in defendant's vehicle, contributed to reasonable belief that defendant was armed and dangerous).

The United States Supreme Court has repeatedly noted that traffic stops are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (noting that a significant percentage of murders of police officers occur during traffic stops); *Adams v. Williams*, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (same). Here, Officer Dotson was conducting a traffic stop late at night in a high-crime area known for drug activity and gun violence. When she made contact with the driver, she detected the odor of burnt marijuana emanating from the vehicle. Officer Dotson decided to conduct a pat-down search of Patterson for officer safety, based in part on her belief that "guns go hand in hand with drugs." Tr. p. 16. While any of these factors standing alone might have been insufficient, in conjunction, they support a reasonable belief that Patterson was armed. Under these facts and circumstances, and in light of the special dangers facing police officers conducting traffic stops, we conclude that the pat-down search was justified by a reasonable concern for officer safety.

■■■■■ Finally, Patterson contends that the warrantless seizure of the marijuana from his pocket violated his rights under the Fourth Amendment. In *Minnesota v. Dickerson*, the United States Supreme Court held that police officers may seize contraband detected through the officer's sense of touch during the lawful execution of a *Terry* protective pat-down search. 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *see also Wright v. State*, 766 N.E.2d 1223, 1233 (Ind.Ct.App. 2002). In reaching its conclusion, the Court reasoned that when an "officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity *immediately* apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons[.]" *Dickerson*, 508 U.S. at 375, 113 S.Ct. 2130 (emphasis added). Accordingly, "if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Id.* at 375–76, 113 S.Ct. 2130. In determining the admissibility of evidence seized under what has come to be known as the "plain feel doctrine," this court has determined that two issues are dispositive: "first, whether the contraband was detected during an initial search for weapons rather than during a further search, and second, whether the identity of the item was immediately apparent to the officer." *Wright*, 766 N.E.2d at 1233.

Here, Officer Dotson testified that while conducting her initial protective pat-down search of Patterson for weapons, she felt an object located in Patterson's right front pants pocket, which she immediately recognized as "narcotics." Tr. p. 13. Officer Dotson was vigorously cross-examined on

this point, and she repeatedly testified that she was able to recognize the item due to its texture, describing it as "lumpy" and "wadded." *Id.* at 19. Officer Dotson also testified that she did not manipulate the item in order to discern what it was. *Id.* at 19–20. We therefore conclude that the warrantless seizure of the marijuana was justified under the plain feel doctrine as set forth in *Dickerson.*

■ For all of these reasons, we conclude that the protective pat-down search of Patterson's person and the ensuing seizure of the marijuana from Patterson's pocket fell within the bounds of the Fourth Amendment to the United States Constitution. Patterson also asserts that the search and seizure violated his rights under Article 1, Section 11 of the Indiana Constitution, but he presents no authority or independent analysis supporting a separate standard under the Indiana Constitution. He has therefore waived any state constitutional claim. *See Lockett v. State,* 747 N.E.2d 539, 541 (Ind.2001).

Affirmed.

BAILEY, J., and CRONE, J., concur.