**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEPHEN GERALD GRAY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD EVERLING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1108-CR-487 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-1006-FD-2976

**May 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Donald Everling appeals his conviction for Class D felony theft.  We affirm.

**Issues**

Everling raises four issues, which we restate as:

> I.     whether the trial court properly denied his motion to dismiss;
>
> II.    whether the trial court properly admitted into evidence statements he made to a loss prevention officer;
>
> III.   whether there is sufficient evidence to support his conviction; and
>
> IV.    whether the trial court properly denied his motion for mistrial.

**Facts**

On June 12, 2010, Everling was in an electronics store in Fishers with Todd Conwell and a juvenile.  The store's loss prevention officer, Darrell Kent, who was on the sales floor, became suspicious of Conwell when he placed two hard drives in a shopping cart Everling was leaning on.  Kent went to the store's loss prevention office and watched Conwell via the store's closed circuit camera system.  Kent observed Everling, who was pushing the cart, and Conwell walk to the main aisle of the store where they split up, with Conwell taking the cart.

Kent then watched Conwell via the security cameras as he walked around the store.  While in the keyboard aisle, Conwell pulled a knife out of his pocket, cut the security strapping on one of the hard drives, removed the packaging, and put the hard

drive in the waistband of his pants. During this time, Kent's attention was focused on Conwell, and Kent did not know where Everling was or what he was doing.

Conwell and Everling met up, each with his own cart with merchandise in it. They stopped in the cellular phone aisle, where Everling spoke with a sales associate for approximately five minutes, and then they walked to the microwave aisle. Conwell again used his knife to remove the security strapping from the second hard drive. While Everling opened and closed microwave doors, Conwell placed the hard drive on a shelf, removed it from its packaging, and put it in the waistband of his pants. Conwell then took a flashlight from his cart, opened the packaging, and put it in his pocket. Then Conwell left his cart in an aisle, and they proceeded to the checkout, where Everling purchased the items in his cart.

Because Conwell's conduct involved a knife, Kent contacted the Fishers Police Department. When Conwell and Everling got ten feet outside of the store, police officers placed them in handcuffs, and they were taken to the store's loss prevention office. The men remained in handcuffs while they were questioned by Kent and asked to sign documents Kent prepared on behalf of the store. Everling signed the documents, including a statement of admission, with assistance from Officer Jordan Graham. Officer Graham then transported Everling to the jail.

On June 22, 2010, the State charged Conwell and Everling jointly with Class D felony theft. The information alleged, "on or about June 12, 2010 Todd Douglas Conwell and Donald Allen Everling did knowingly exert unauthorized control over the property of Frye's [sic] Electronics, to-wit: computer hard drives or a flashlight; with the intent to

3

deprive said person of any part of the use or value of the property[.]" App. p. 8 (emphasis omitted). The charging information was eventually amended to include an allegation that Everling was an habitual offender.

On July 29, 2010, Everling and his attorney failed to appear at a pre-trial conference. On August 16, 2010, Everling moved for a continuance, which the trial court granted, and filed a motion to suppress seeking to suppress any statements he made during his questioning at the store and while being transported to the jail because he had not been given Miranda warnings. Everling also sought the suppression of the documents he signed with police assistance while in the loss prevention office. On November 29, 2010, after a hearing, the trial court ruled that Everling's statements in response to Kent's questioning would not be suppressed because Kent was not acting on behalf of the police. The trial court, however, did suppress the documents that Everling signed with police assistance and the statements Everling made to Officer Graham while being transported to jail.

On November 30, 2010, the State filed a motion to certify the trial court's ruling on the motion to suppress for interlocutory appeal. On December 1, 2010, the State moved to stay the cause pending judicial review. That same day, the trial court granted the State's motion for interlocutory appeal and the motion to stay. No further action was taken by the State to perfect the appeal.

On May 6, 2011, the State filed a motion to reinstate prosecution, which provided, "although this cause was submitted in timely fashion pursuant to this Court's order for interlocutory appeal to the Office of the Indiana Attorney General in December of 2010,

4

the cause was not placed on the docket of the Indiana Appellate Court." Id. at 26. That same day, the trial court granted the State's motion and set the trial for July 28, 2011. On July 18, 2011, Everling filed a motion to dismiss arguing that the delay in prosecuting the case violated his constitutional right to a speedy trial and that the State was statutorily precluded from prosecuting him. The State responded, indicating that "[t]he cause was not placed on the docket of the Indiana Appellate Court." Id. at 31. The trial court denied the motion to dismiss, and a jury trial was conducted as scheduled. Everling was convicted of Class D felony theft and found to be an habitual offender. He now appeals.

**Analysis**

### I. Motion to Dismiss

Everling argues that the trial court erroneously denied his motion to dismiss. "Abuse of discretion is the appropriate standard for appellate review of a trial court's decision to dismiss a charging information." State v. Davis, 898 N.E.2d 281, 285 (Ind. 2008).

Everling first argues that the five-month delay caused by the State's unperfected interlocutory appeal violated his right to a speedy trial guaranteed by the 6th and 14th Amendments to the United States Constitution and Article 1, Section 12 of the Indiana Constitution. "In analyzing whether there has been a violation of the right to a speedy trial under our state constitution, Indiana has applied the analysis used in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)." Lee v. State, 684 N.E.2d 1143, 1146 (Ind. 1997). "This analysis employs four factors: (1) length of delay, (2) defendant's assertion of his right, (3) the government's reason for the delay, and (4) the

prejudice to the defendant." Id. (citing Barker, 407 U.S. at 530, 92 S. Ct. at 2191-92). None of the four factors identified above is regarded as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial; rather, they are related factors and must be considered together with such other circumstances as may be relevant. Barker, 407 U.S. at 533, 92 S. Ct. at 2193. "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." Id., 92 S. Ct. at 2193.

Everling asserts, "the State's inexcusable delay impeded the process of justice moving deliberately toward the end of obtaining a trial within a reasonable and agreeable time, and that he suffered prejudice as a result." Appellant's Br. p. 13. Everling does not present his argument in terms of the four Barker factors but, instead, focuses on the prejudice that he contends was a result of the delay.

According to Barker:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532, 92 S. Ct. at 2193 (footnote omitted). Everling provides us with no insight regarding his pretrial incarceration or anxiety and concern, and the chronological case summary indicates that Everling was released on bond in June 2010. As for his argument that his defense was impaired, Everling argues that he was

6

prejudiced by the delay because Conwell, who was available as a witness for the first trial date, could not be located at the time of the July 2011 trial.

Everling's argument is based on an undated affidavit by Conwell in which Conwell asserts that he did not communicate with Everling about concealing merchandise or exerting unauthorized control over the store's property and that he did not ask for or seek the help of any other person. Even if Conwell would have provided testimony consistent with the affidavit, the jury viewed the extensive video footage from the store's security camera showing the two men interacting at the store. In light of this evidence, the jury was able to determine firsthand whether Everling and Conwell were acting in concert, and we are not necessarily convinced that Conwell's purported testimony would have had the impact on jury that Everling suggests.[1]

Nevertheless, Everling's assessment of prejudice does not compel us to conclude that the five-month delay prejudiced him in a manner that denied him his constitutional right to a speedy trial. Regardless of whether Conwell was available for the December 2010 trial date because he was incarcerated, there is nothing in the record to suggest that the State was somehow responsible for Conwell's subsequent unavailability or that a shorter delay would have in resulted in Conwell being available to testify at trial. Moreover, nothing in the record shows the efforts Everling made to locate Conwell for trial. Thus, the record does not show the five-month delay was part of a "deliberate

---

[1] Everling also asserts that he was prejudiced by the delay because of the inconsistencies between Kent's testimony at the suppression hearing and at trial. Because Everling was free to bring these inconsistencies to the jury's attention during trial, we do not believe that this is an appropriate basis for establishing that he was prejudiced by the delay.

7

attempt to delay the trial in order to hamper the defense[.]" Id. at 531, 92 S. Ct. at 2192. This is especially true when considering that Everling was tried within thirteen months of being charged, that Everling and his counsel failed to appear at the July 2010 pre-trial hearing, that Everling moved for a continuance in August 2010, resulting in the trial being continued until December 2, 2010, and that Everling did not assert his speedy trial rights until July 2011. Thus, Everling has not established that he was denied his constitutional right to a speedy trial.

Everling also argues that the trial court should have granted his motion to dismiss because "when the State sought an interlocutory appeal, it was implicit that the order precluded further prosecution without the evidence or the State had no right to seek an appeal in the first place." Appellant's Br. p. 14. This argument is based on Indiana Code Section 35-38-4-2, which provides:

> Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases:
>
> * * * * *
>
> (5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution.
>
> (6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:
>
>> (A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

8

> (B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or
>
> (C) the remedy by appeal after judgment is otherwise inadequate.

According to Everling, because neither the trial court nor this court issued orders specifically addressing the factors in Indiana Code Section 35-38-4-2(6), the only basis for the State's appeal was Indiana Code Section 35-38-4-2(5). Referring to Indiana Code Section 35-38-4-2(5), Everling asserts, "[i]nherent in that provision is that further prosecution is precluded unless the order is overturned." Id. at 14.

Contrary to Everling's argument, in its motion to certify for interlocutory appeal, the State asserted that it would suffer significant damage if the suppression order was incorrect, that the order involves a substantial question of law, and that the State's only adequate remedy was an interlocutory appeal. Clearly, the State was pursuing an interlocutory appeal based on Indiana Code Section 35-38-4-2(6), and the trial court, after having "examined and reviewed" the State's motion, certified the order for interlocutory appeal. App. p. 24. The State in no way conceded that further prosecution of Everling was precluded without the suppressed evidence. The fact that the trial court's order granting the State's motion did not refer to the factors in Indiana Code Section 35-38-4-2(6) did not somehow prohibit the State from further prosecuting Everling. Everling has not established that the trial court improperly denied his motion to dismiss.

### II. Kent's Testimony

Everling argues that the trial court abused its discretion by allowing Kent to testify regarding statements Everling made while Kent questioned him in the store's loss prevention office in the presence of police officers. "The admission of evidence is within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion." Patterson v. State, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011). "A trial court abuses its discretion if its decision is clearly against the logic and the effect of the facts and circumstances before the court, or if the court has misinterpreted the law." Id. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. Id. We also consider the uncontested evidence favorable to the defendant. Id.

Everling claims that his interaction with Kent was dominated by police to the point where Miranda warnings were required. "In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court prescribed certain warnings which must be given by the police to an accused prior to any custodial interrogation and declared inadmissible any statements obtained from such interrogation where the required warnings were not given." Owen v. State, 490 N.E.2d 1130, 1132 (Ind. Ct. App. 1986), trans. denied. The Owen court explained:

> The procedural safeguards of Miranda apply only to custodial interrogation . . . . It is custodial interrogation, in a coercive atmosphere, by police officers or a police agency, seeking to elicit incriminating responses which triggers the necessity for Miranda warnings. Since the Miranda warnings need be given only in cases of custodial interrogation by police officers, it is clear that private citizens need not give Miranda warnings. Luckett v. State (1973), 158 Ind. App. 571, 303 N.E.2d 670.

10

Id. at 1133.

In Owen, Newman, an off-duty police officer in civilian clothes working as a security guard for a store, observed Owen shoplift a package of lunch meat and cigars. When Owen left the store, Newman and the store manager asked Owen to return to the Store. Newman identified himself as a police officer and showed Owen his police identification. Owen was taken to a small room and, because Owen was a captain with the Indianapolis Police Department, an off-duty police captain who was also in the store was summoned. Owen was then questioned by the store manager and Newman without being Mirandized, and Owen signed an admission of guilt. We ultimately determined that, by immediately identifying himself as a police officer, Newman intended to use his status as a police officer and its attendant power and that, when Newman summoned another higher ranking officer, he created "a police dominated custodial atmosphere." Id. at 1137. We concluded, "Owen was subjected to custodial interrogation by a police agency without the benefit of Miranda warnings. The warnings were required in this case and the failure to give them renders his statements inadmissible." Id.

At issue here is the admissibility of Kent's testimony that, while they were in the store's loss prevention office, Everling told Kent that he and Conwell were buddies and that he was looking over the microwaves for Conwell. Even if Owen applies and Kent's testimony was improperly admitted, Miranda violations are subject to harmless error analysis. See Kelley v. State, 825 N.E.2d 420, 428 (Ind. Ct. App. 2005). "When determining whether an error is harmless, our review is de novo and the error must be

11

harmless beyond a reasonable doubt." Id. at 428-29. "The State must show that the admission of evidence did not contribute to the conviction." Id. at 429. "To say that an error did not contribute to a conviction is to conclude that the error is unimportant in relation to everything else considered by the trial court on the issue in question, as revealed in the record." Id.

As the State points out, the credibility of Kent's testimony regarding these statements was brought into question when Kent testified that he did not include Everling's statements in his comprehensive report of the incident. Moreover, the jury watched the surveillance video showing the men together in the store. The jury saw Conwell and Everling interacting while they shopped together, particularly in the microwave aisle where they stood closely and talked as Everling opened and closed microwave doors while Conwell removed a hard drive from its packaging and placed it in his pants. By viewing the lengthy surveillance video of the two men together in the store, the jury was able to view the two men's conduct and demeanor to determine whether they were acting in concert. Under these circumstances, we believe that any error in the admission of Kent's testimony regarding Everling's statements did not contribute to the conviction and was harmless beyond a reasonable doubt.

### III. Sufficiency of the Evidence

Everling also argues there is insufficient evidence to support his theft conviction. The standard of review for claims of insufficient evidence is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, and we respect the jury's exclusive province to weigh conflicting evidence. Jackson v. State, 925 N.E.2d 369, 375

12

(Ind. 2010). We consider only the probative evidence and reasonable inferences supporting the verdict and affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

Everling argues that, without Kent's testimony about Everling's connection to Conwell, the State's case "probably doesn't even rise to probable cause." Appellant's Br. p. 18. As we have already determined, however, the trial court did not abuse its discretion in admitting Kent's testimony into evidence. Thus, the jury was free to consider this testimony.

Everling also challenges the probative value of Kent's trial testimony on the basis that it conflicted with his testimony at the suppression hearing and was not included in the report he prepared after the incident. At the suppression hearing, Kent testified that he could not remember asking Everling any questions in the loss prevention office. At trial, Kent testified that Everling told Kent he and Conwell were buddies and that he was looking over the microwaves for Conwell. Everling then questioned Kent as to why his report did not reference these statements. Everling argues that Kent's trial testimony is highly suspect and uncorroborated.

We disagree with Everling's assessment of the evidence. The jury viewed the videotape of the security footage, which showed the interaction between Conwell and Everling and specifically showed Everling's conduct in the microwave aisle. From this evidence alone, the jury was able to assess whether the two men were acting in concert to commit theft. Further, Everling cross-examined Kent regarding why his report did not

13

include Everling's statements. It was the jury's role to determine Kent's credibility, and we will not reweigh the evidence or reassess credibility. Everling has not established that the evidence is insufficient to support his conviction.

### *IV. Mistrial*

Everling argues that the trial court erroneously denied his request for a mistrial during the State's questioning of Officer Graham. "We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in 'the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" Pittman v. State, 885 N.E.2d 1246, 1255 (Ind. 2008) (quoting McManus v. State, 814 N.E.2d 253, 260 (Ind. 2004), cert. denied). A mistrial is appropriate only when the questioned conduct is so prejudicial and inflammatory that the defendant is placed in a position of grave peril to which he or she should not have been subjected. Id. The gravity of the peril is measured by the probable persuasive effect of the conduct on the jury. Id.

While the State questioned Officer Graham, the following exchange took place:

> Q.     After Mr. Kent had finished his investigation at Fry's what did you do next?
>
> A.     Well, concurrently with that investigation, I believe at one time I asked both Mr. Conwell and Mr. Everling if they had ever been arrested before.
>
>> THE STATE:     Before you object, I'll withdraw. I withdraw that.
>>
>> THE DEFENSE:     Okay. Your Honor, we'd better approach.

14

Tr. p. 233. Defense counsel asked the jury to be excused. The trial court asked if they could wait until they finished questioning the witness, and defense counsel agreed as long as the objection was preserved. When Officer Graham finished testifying, the jury was excused and defense counsel moved for a mistrial. Defense counsel acknowledged that the prosecutor did not necessarily elicit testimony in violation of the pre-trial motion in limine, which prohibited references to whether Everling had been arrested or investigated for any other crime. Instead, Defense counsel's objection was based on the prosecutor withdrawing the question. According to defense counsel's argument to the trial court, "it was the State's reaction in jumping up and withdrawing the question as if, Wow, we can't -- we can't disclose any of that, that has created the problem." Id. at 240. Defense counsel was concerned that the jury would be left with the impression that Everling had a lengthy criminal history. After extensive arguments by both sides, the trial court stated:

> I don't think it rises to the level of a mistrial. I mean, if you want a limiting instruction, I will be glad to give you a limiting instruction, but I'm going to deny your motion for a mistrial. I don't think it merits a mistrial, but a limiting instruction to disregard whether or not your client has been arrested, even though there was no evidence suggesting he has been arrested.
> If you want such a limiting instruction, . . . you know that's probably a double edge sword, too, giving a limiting instruction. But that's the best I can do for you today. But you can think about that.

Id. at 247-48. Defense counsel did not request a limiting instruction.

Assuming the issue was properly preserved notwithstanding counsel's failure to seek an admonishment, Everling acknowledges that "[i]t is difficult if not impossible" for us to appreciate the dynamics of what took place by reading the transcript. Appellant's

15

Br. p. 22. This is the very reason for our deference to the trial court's ruling on such motions. The trial court was able to observe the prosecutor's response to Officer Graham's answer and to assess the jury's reaction to the line of questioning and determined that a mistrial was not warranted. Without more, we defer to the trial court's assessment. Everling has not established that the trial court abused its discretion in denying his motion for a mistrial.

## Conclusion

Everling has not established that his motion to dismiss was improperly denied, that the admission of Kent's testimony was reversible error, that there is insufficient evidence to sustain his conviction, or that his motion for mistrial was improperly denied. We affirm.

Affirmed.

BAKER, J., and BROWN, J., concur.