Thomas C. TEMPERLY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1001–CR–52.

Court of Appeals of Indiana.

Sept. 9, 2010.

J.J. Paul, III, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Thomas C. Temperly was convicted after a bench trial of operating while intoxicated [1] ("OWI") as a Class A misdemeanor. He appeals, raising several issues, which we consolidate and restate as:

I. Whether the sanctions imposed by Indiana Code section 9–30–7–3 required Temperly to consent to a chemical test in the absence of probable cause;

II. Whether Temperly's blood test results obtained under Indiana Code section 9–30–7–3 were admissible in a criminal prosecution under Indiana Code chapter 9–30–5; and

III. Whether sufficient evidence was presented to support Temperly's conviction for operating while intoxicated as a Class A misdemeanor.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

At approximately 1:25 a.m. on February 24, 2008, Temperly was driving a pickup truck in Marion County, Indiana when he was involved in a fatal accident in which Andrew Merrick was killed. Temperly was not the cause of the accident. Merrick had been observed driving erratically prior to the accident and drove into the path of Temperly's truck. Temperly was transported to Wishard Hospital for treatment of his injuries received in the accident. Officer J. Bruce Wright of the Lawrence Police Department and Fatal Alcohol Crash Team responded to the hospital. He was advised by the medics that Temperly had an odor of alcoholic beverages about his person and that Temperly had said he had consumed beer prior to the accident. Officer Wright read the implied consent law under Indiana Code section 9–30–7–3 to Temperly, which pertained to his being the driver of a vehicle involved in a fatal accident. Temperly was advised that, if he refused to submit to a chemical test, his driving privileges would be suspended for one year, or two years if he had a prior conviction for OWI. He was further advised that a refusal to submit to a chemical test would be a Class C infraction or a Class A infraction if he had a prior conviction for OWI. Temperly had prior convictions for OWI in 1982, 1985, and 1987. Temperly consented to the chemical test and signed a consent form for a voluntary blood draw. His blood was drawn at 2:36 a.m. by a registered nurse, who followed a protocol prepared by a doctor. Subsequent testing determined that Temperly's blood alcohol content ("BAC") was .244.

The State charged Temperly with OWI as a Class A misdemeanor, public intoxication as a Class B misdemeanor, and operating with a BAC of .15 or more as a Class A misdemeanor. The parties proceeded to a bench trial by stipulated facts.

---

1. *See* Ind.Code § 9–30–5–2.

Temperly argued that: (1) Indiana Code chapter 9–30–7 is unconstitutional because it allows a chemical test in the absence of probable cause; (2) any consent given pursuant to chapter 9–30–7 is illusory because consent is compelled by the sanction of a two-year license suspension and a substantial fine of $10,000; and (3) chapter 9–30–7 does not authorize the admission of the blood test results in a criminal proceeding. The trial court found it unnecessary to address Temperly's constitutional challenges to Indiana Code chapter 9–30–7 because, in this case, the officer had probable cause to believe that Temperly had been operating a vehicle while intoxicated, and therefore, the chemical test was valid under Indiana Code chapter 9–30–6. The trial court also found that Temperly had voluntarily consented to the chemical test. The court further found that Temperly had failed to rebut the prima facie evidence of his intoxication, i.e., the .244 BAC chemical test result. The trial court found Temperly guilty as charged, but only entered judgment of conviction for OWI as a Class A misdemeanor. Temperly now appeals.

## DISCUSSION AND DECISION

### I. Indiana Code § 9–30–7–3

 Temperly initially argues that the trial court erred when it found that probable cause existed for Officer Wright to offer a chemical test for intoxication under Indiana Code section 9–30–6–2 because the evidence was insufficient to establish probable cause. We decline to decide this issue because Officer Wright offered Temperly the test under Indiana Code section 9–30–7–3, not section 9–30–6–2. Indiana Code section 9–30–7–3 does not require a showing of probable cause. *See Brown v. State,* 744 N.E.2d 989 (Ind.Ct.App.2001). This section was applicable to the present case since the officer had reason to believe that Temperly had operated a vehicle that was

involved in a fatal accident. Ind.Code § 9–30–7–3(a). The officer read the implied consent law under this section to Temperly, and Temperly consented under this section. We therefore move on to Temperly's argument regarding the application of section 9–30–7–3.

 The starting point for our inquiry is Indiana Code section 9–30–7–2, which sets out Indiana's implied consent law in accidents involving serious injury or death:

A person who operates a vehicle impliedly consents to submit to the portable breath test or chemical test under this chapter as a condition of operating a vehicle in Indiana. A person must submit to each portable breath test or chemical test offered by a law enforcement officer under this chapter to comply with this chapter.

Indiana Code section 9–30–7–3(a) provides:

A law enforcement officer shall offer a portable breath test or chemical test to any person who the officer has reason to believe operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury.

Indiana Code section 9–30–7–5 sets out the consequences of refusal to submit to test:

(a) A person who refuses to submit to a portable breath test or chemical test offered under this chapter commits a Class C infraction. However, the person commits a Class A infraction if the person has at least one (1) previous conviction for operating while intoxicated.

(b) In addition to any other penalty imposed, the court shall suspend the person's driving privileges:

(1) for one (1) year; or

(2) if the person has at least one (1) previous conviction for operating while intoxicated, for two (2) years.

Finally, Indiana Code section 34–28–5–4 provides that the maximum judgment for a violation constituting a Class A infraction is a fine of up to $10,000. Temperly argues that his consent to the chemical test was not voluntarily given because it was coerced with the threat of the loss of a privilege and an onerous fine. He contends that the threat of the suspension of his driver's license for two years and a possible $10,000 fine caused his consent to be the product of coercion. Because his consent was unconstitutionally coerced, he asserts it was obtained in violation of the Fourth Amendment of the United States Constitution and Article I, section 11 of the Indiana Constitution.

Under the Fourth Amendment, generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Buckley v. State*, 886 N.E.2d 10, 14 (Ind.Ct.App.2008). When a warrantless search occurs, the State bears the burden of proving an exception to the warrant requirement. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind.2005). One of the well-recognized exceptions to the warrant requirement is a voluntary and knowing consent to search. *Krise v. State*, 746 N.E.2d 957, 961 (Ind.2001). The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Navarro v. State*, 855 N.E.2d 671, 675 (Ind.Ct.App.2006). A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Id.* To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege. *Id.* Such waiver may not be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld. *Id.*

In *Johnson v. State*, 450 N.E.2d 123 (Ind.Ct.App.1983), this court rejected a contention that the defendant's consent was a product of coercion because he had been informed of the possible penalty for refusing a chemical test under the implied consent law. *Id.* at 124–25. "Knowledge of a possible penalty for refusal to submit to the test is not so inherently coercive as to negate his consent." *Id.* at 125. This court found there was no evidence that the officer had made any promises or threats, used or threatened any physical force, or engaged in any deliberate trickery; therefore, the consent was held to be voluntarily given. *Id.*

More recently, this court relied on *Johnson* to again reject the argument that the implied consent law has a "coercive effect" and found a defendant's consent to a chemical test to be valid under the Fourth Amendment. *Cochran v. State*, 771 N.E.2d 104, 108 (Ind.Ct.App.2002), *trans. denied.* In that case, we reemphasized our holding that an officer's information as to the possible penalty for refusal to submit to a chemical test to not be so inherently coercive as to negate a voluntary consent. *Id.*

Here, Temperly was involved in a fatal accident and was transported to the hospital because of his injuries. Officer Wright responded to the hospital and read Temperly the implied consent law under Indiana Code section 9–30–7–3, which pertained to his being the driver of a vehicle involved in a fatal accident. Temperly was advised that, if he refused to submit to a chemical test, his driving privileges would

be suspended for one year, or two years if he had a prior conviction for OWI. He was further advised that a refusal would be a Class C infraction or a Class A infraction if he had a prior conviction for OWI. Temperly had prior convictions for OWI. Temperly consented to the chemical test and signed a consent form for a voluntary blood draw.

Temperly argues that his consent was not voluntary due to the fact that he would be subject to a two-year suspension of his driver's license and a fine of up to $10,000, which is the fine for a Class A infraction, if he refused. As previously stated, an officer's mere advisement of the possible penalty for refusing to consent has been held to not negate a voluntary consent. *Cochran,* 771 N.E.2d at 108; *Johnson,* 450 N.E.2d at 125.

We conclude that there were no circumstances to indicate that Temperly's consent was not voluntarily given. He was correctly advised of the consequences for refusing a chemical test and was never told that he could not refuse the test. There was no indication that the officer offered any promises, made any physical threats, or engaged in any coercive behavior or that Temperly did not fully understand the choices available to him. We therefore find that Temperly voluntarily consented to the chemical test.

Further, we do not believe the possibility of a fine of up to $10,000 under the Class A infraction caused his consent to be involuntary because Temperly has failed to show that he was aware of the possibility of such a fine when he consented to the chemical test. The stipulated facts only show that he was informed that a refusal to submit to a chemical test would be a Class A infraction if he had prior convictions, but not what the possible fine was for such an infraction. Therefore, because he was not advised of the possible fine, he cannot claim that it somehow influenced his decision to consent to the chemical test.

We next determine whether Temperly's consent was valid under the Indiana Constitution. Under Article I, section 11 of the Indiana Constitution, the validity of a search by the government turns on an evaluation of the reasonableness of the officers' conduct under the totality of the circumstances. *Tate v. State,* 835 N.E.2d 499, 507 (Ind.Ct.App. 2005), *trans. denied.* The reasonableness of a search or seizure turns on a "balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005).

Here, Temperly was involved in a fatal accident, smelled of alcohol, and admitted to consuming beer prior to the accident. His BAC was important evidence that could prove or disprove his intoxication, and alcohol dissipates from the blood fairly quickly, which means the evidence would have been lost forever once that dissipation occurred. Therefore, Temperly's blood needed to be tested as quickly as possible. Officer Wright read Temperly the implied consent law, and Temperly consented to the chemical test. Although a blood draw is a significant intrusion into one's body, Temperly was already at the hospital being treated for injuries sustained in the accident, and presumably other physical examinations and tests were being performed. We therefore conclude that, under the totality of the circumstances, the consensual chemical test was reasonable under Article I, section 11 of the Indiana Constitution.

**II. Admissibility of Blood Test Results**

Temperly argues that his blood test results obtained under Indiana Code

chapter 9–30–7 were not admissible in his prosecution under Indiana Code chapter 9–30–5. He specifically contends this is so because chapter 9–30–7 does not contain language specifically authorizing test results obtained under this chapter to be admitted in any proceeding under chapter 9–30–5. Temperly notes that, under Indiana Code section 9–30–6–15, BAC evidence is admissible at any proceeding for an offense under chapter 9–30–5, but that chapter 9–30–6 is separate and distinct from 9–30–7, and the two should not be read together. *See Brown,* 744 N.E.2d at 994 ("Therefore, we conclude that common sense would dictate that the two chapters are separate and distinct and should not be read together."). Thus, in the absence of any language in chapter 9–30–7 explicitly allowing the admission of blood test results obtained under that chapter to be admissible in prosecutions under 9–30–5, Temperly asserts it was error to admit his test results obtained under 9–30–7–3 in his prosecution. We disagree.

*Brown* involved the question whether a test offered following a fatal traffic accident under Indiana Code section 9–30–7–3 which does not require a showing of probable cause also had to meet the requirements of section 9–30–6–2 which does require such a showing. We held that these two statutory provisions were separate and distinct should not be read together to impose the requirement of probable cause for blood draws done pursuant to Chapter 6 of the statute upon blood draws done under Chapter 7. The blood draws under Chapter 6 are separate and distinct from those under Chapter 7.

Other provisions of Chapter 7, however, make explicit reference to provisions in Chapter 6 and of necessity must be read together. Indiana Code § 9–30–7–4 specifically references provisions of Chapter 6 and provides:

(a) If a chemical test conducted under this chapter involves an analysis of breath, the test must comply with the requirements under IC 9–30–6–5.

(b) IC 9–30–6–6 applies if a physician or a person trained in obtaining bodily substance samples who is acting under the direction of or under a protocol prepared by a physician or who has been engaged to obtain bodily substance samples:

(1) obtains a blood, urine, or other bodily substance sample from a person at the request of a law enforcement officer who acts under this section; or

(2) performs a chemical test on blood, urine, or another bodily substance obtained from a person under this section.

■■■■ The interpretation of a statute is a question of law that we review de novo. *Houston v. State,* 898 N.E.2d 358, 361 (Ind.Ct.App.2008), *trans. denied* (2009). Where the language of a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. *Id.* The legislature is presumed to have intended the language to be applied logically and not to bring about an unjust or absurd result. *Id.*

Pursuant to Indiana Code section 9–30–6–15:

At any proceeding concerning an offense under IC 9–30–5 or a violation under IC 9–30–15, evidence of the alcohol concentration that was in the blood of the person charged with the offense:

(1) at the time of the alleged violation; or

(2) within the time allowed for testing under [9–30–6–2];

as shown by an analysis of the person's breath, blood, urine, or other bodily substance is admissible.

Ind.Code § 9–30–6–15(a).

The plain language of this statute provides that BAC evidence is admissible at any proceeding concerning an offense under chapter 9–30–5 as long as it was obtained within the requisite time limitation. Temperly was charged with an offense under Indiana Code chapter 9–30–5. The blood was drawn within the time allowed for testing under Indiana Code section 9–30–6–2. Temperly's blood evidence was admissible under the plain language of the statute.

Nothing in the plain language of the statute suggests that the admissibility of BAC evidence is limited to that which is discovered pursuant to chapter 9–30–6. If an officer requested and received consent under 9–30–7, and the testing was done within the statutory time period, the test results obtained will be BAC evidence that will be offered in a "proceeding concerning an offense under IC 9–30–5." *Id.* The plain language of the statute covers that situation.

There is nothing in the record before us to indicate that the legislature intended to preclude the use of BAC evidence obtained in cases resulting in death or serious bodily injury, which are the most serious OWI cases, and allow the evidence in OWI cases where no one suffered any injuries. Further, if BAC evidence obtained under chapter 9–30–7 was inadmissible in a crim-

inal prosecution as a matter of statutory law, analysis of the constitutionality of chemical testing by different panels of this court for the purpose of determining admissibility would have been meaningless in cases such as, *Brown v. State, Griswold v. State,* and *Hannoy v. State. See Hannoy v. State,* 789 N.E.2d 977, 992–93 (Ind.Ct. App.2003) (finding BAC evidence inadmissible in prosecution under chapter 9–30–5 that was obtained without compliance with implied consent law and with no probable cause of intoxication or actual consent), *trans. denied; Brown,* 744 N.E.2d at 995 (finding that chemical test given to defendant involved in fatal accident was constitutionally valid search); *Griswold v. State,* 725 N.E.2d 416, 420 (Ind.Ct.App.2000) (finding that chemical test results obtained pursuant to Indiana Code section 9–30–7–3 were admissible in prosecution under Indiana Code section 9–30–5–5), *trans. denied.* The lack of statutory authority alone could have supported the conclusion that the BAC evidence was inadmissible.

■ Additionally, Temperly did not have to consent to the use of the BAC evidence against him. The consent given was to allow the search to be performed. After consent to a chemical test has been given, the defendant may not then object to the results of the chemical test being used against him. *State v. Johnson,* 503 N.E.2d 431, 433 (Ind.Ct.App.1987), *trans. denied.* We therefore conclude that the BAC evidence was validly obtained pursuant to Indiana Code section 9–30–7–3, complied with the requirements of Indiana Code section 9–30–6–2, and was admissible in Temperly's prosecution under chapter 9–30–5.[2]

---

**2.** The State also argues that even without regard to statutory authority, the blood evidence would be admissible here under a sufficient showing of reliability. Because we hold that the blood evidence was properly admitted pursuant to statutory authority, we do not reach this issue.

### III. Sufficient Evidence

 Our standard of reviewing claims of sufficiency of the evidence is well settled. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Mork v. State*, 912 N.E.2d 408, 411 (Ind.Ct.App.2009) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). We do not reweigh the evidence or assess witness credibility. *Id.* We consider conflicting evidence most favorable to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

 Temperly argues that insufficient evidence was presented to support his conviction for OWI as a Class A misdemeanor. He specifically contends that the stipulated facts failed to prove that he was intoxicated because the only evidence presented was that he was involved in an accident for which he was not at fault, he smelled of alcohol, and he admitted to consuming beer prior to the accident. Temperly further claims that the stipulated facts did not support a conclusion that he endangered a person, as the evidence of intoxication alone cannot support this element of the crime.

 In order to support a conviction for operating while intoxicated as a Class A misdemeanor, the State was required to prove that Temperly operated a vehicle while intoxicated in a manner that endangered a person. Ind.Code § 9–30–5–2. Intoxicated means under the influence of alcohol so that "there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind.Code § 9–13–2–86. " 'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation the person had" at least a .08 BAC. Ind.Code § 9–13–2–131. Prima facie evidence is evidence that will establish a fact or sustain judgment unless contradictory evidence is produced. Black's Law Dictionary 638–39 (9th ed. 2009).

In the present case, the stipulated facts showed that Temperly had a BAC of .244 and that his blood had been drawn within the time period permitted by statute. Therefore, the State established prima facie evidence of intoxication through the blood test evidence, and the trial court found Temperly guilty, meaning it did not find that this prima facie evidence had been rebutted. Temperly's argument is merely a request to reweigh the evidence, which we cannot do. *Mork*, 912 N.E.2d at 411. We conclude that sufficient evidence was presented to prove intoxication.

We next determine whether sufficient evidence was presented to prove that Temperly endangered a person.[3] Both our Supreme Court and this court have recently held that the State is required to present evidence beyond mere intoxication in order to prove the element of endangerment and support a conviction of OWI as a Class A misdemeanor. *Outlaw v. State*, 929 N.E.2d 196, 196 (Ind.2010) (adopting and incorporating by reference this court's opinion in *Outlaw v. State*, 918 N.E.2d 379

---

**3.** The State contends that Temperly had waived this argument for failure to develop a cogent argument under Indiana Appellate Rule 46(A)(8)(a). We do not agree as we can clearly discern his contention from the language used, and he included citation to authority to support such contention. We therefore reject the State's waiver argument and reach the merits of Temperly's claim.

(Ind.Ct.App.2009)); *Dorsett v. State,* 921 N.E.2d 529, 533 (Ind.Ct.App.2010). Here, the stipulated facts established that Temperly was involved in a fatal accident, of which he was not the cause, when Merrick, who had been observed driving erratically, drove his vehicle into the path of Temperly's vehicle. *Appellant's App.* at 26. The stipulated facts also showed that Temperly had an odor of alcoholic beverages about his person, admitted that he had consumed beer prior to the accident, and was determined to have a BAC of .244 after a chemical test. *Id.* at 27–28. No evidence other than Temperly's intoxication was presented to suggest that he operated his vehicle in a manner that endangered himself or any other person. We therefore conclude that insufficient evidence was presented that Temperly operated his vehicle while intoxicated in a manner than endangered a person, and we must reverse his conviction.

■ However, the trial court also found Temperly guilty of operating with a BAC of .15 or more as a Class A misdemeanor, which the court merged with his conviction for OWI as a Class A misdemeanor before entering judgment. *See e.g., Green v. State,* 856 N.E.2d 703, 704 (Ind.2006) ("a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned."). To prove that Temperly operated a vehicle with a BAC of .15 or more as a Class A misdemeanor, the State was required to show that he had a BAC of .15 or more at the time he operated a vehicle. Ind.Code § 9–30–5–1(b). The stipulated facts established that Temperly operated a vehicle and had a BAC of .244, and nothing in our decision today affects the trial court's conclusion on this charge. We accordingly remand this to the trial court with instructions that it vacate Tem-

perly's Class A misdemeanor conviction and sentence for OWI and enter judgment and an appropriate sentence for Class A misdemeanor operating with a BAC of .15 or more. *See e.g., Dorsett,* 921 N.E.2d at 533 (remanding case to trial court for judgment to be entered on previously merged conviction when insufficient evidence found to support conviction for which judgment had been entered).

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BAILEY, J., concur.