**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 27 2013, 7:10 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES E. BRITT, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1304-CR-152 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Olga H. Stickel, Judge
Cause No. 20D04-1204-FD-484

**December 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

James E. Britt, Jr. appeals his convictions of class D felony Possession of Marijuana[1] and class A misdemeanor Carrying a Handgun Without a License.[2] On appeal, Britt argues that the trial court abused its discretion in admitting evidence seized as a result of an illegal search.

We affirm.

Around midnight on April 20, 2012, Elkhart City Police Corporal Andy Rucker was on duty and sitting in his parked police cruiser in a school parking lot waiting to meet with another police officer. Corporal Rucker's window was rolled down, and he heard loud music coming from a large SUV from over one hundred feet away, in violation of a city noise ordinance. Corporal Rucker activated his emergency lights and initiated a traffic stop.

Corporal Rucker then made contact with the driver, who identified himself as Britt and produced a Michigan driver's license. Corporal Rucker informed Britt of the noise ordinance, and Britt responded that he was from Detroit and unaware of the city ordinance. Corporal Rucker then returned to his squad car to check Britt's license and vehicle information and fill out a citation. Corporal Rucker also radioed for backup and requested a nearby canine unit to conduct a free-air sniff of the exterior of the vehicle. Officer Newland[3] arrived within a couple of minutes, followed a couple of minutes later by Officer Lee Brooks and his canine partner. Officer Brooks approached the SUV to ask Britt to step out of the vehicle while he and his canine partner performed an exterior sweep. Upon making contact

---

[1] Ind. Code Ann. § 35-48-4-11 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Technical Sess.).
[2] Ind. Code Ann. § 35-47-2-1 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Technical Sess.); I.C. § 35-47-2-23 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Technical Sess.).
[3] Officer Newland's first name does not appear in the record.

with Britt, Officer Brooks opened the driver-side door and asked Britt if he had any weapons. Britt responded that he had a handgun in the center console of his vehicle. Officer Brooks asked Britt to exit the vehicle, and Britt complied. With Britt's consent, Officer Brooks performed a pat-down search of Britt and found no weapons or contraband. Officer Brooks then escorted Britt, who was not handcuffed or otherwise restrained, to the area between the SUV and Corporal Rucker's cruiser, approximately fifteen feet away from the SUV.

Officer Brooks opened the center console of the SUV and removed the handgun, which was loaded and had a bullet in the chamber. Officer Brooks then unloaded the gun and checked its serial number with dispatch, confirming that it was not stolen. At about the same time, Officer Newland radioed Corporal Rucker, who was still in his police cruiser, and asked him to determine whether Britt had a valid license to carry a handgun. Corporal Rucker contacted dispatch and inquired as to whether Britt was licensed to carry a handgun in Michigan, and Officer Brooks placed the unloaded handgun in Corporal Rucker's vehicle before performing the canine sweep, which did not reveal the presence of any contraband. Meanwhile, dispatch informed Corporal Rucker that Britt had been denied a handgun permit in Michigan due to a felony conviction. Britt was then placed under arrest for carrying a handgun without a license, and Officer Newland transported him to the police station for booking. Corporal Rucker and Officer Brooks stayed behind and performed an inventory search of the SUV in preparation for its impoundment. During the search, the officers discovered a bag containing 432.04 grams of marijuana behind a rear side panel in the back of the SUV.

As a result of these events, the State charged Britt with class D felony possession of marijuana and class A misdemeanor carrying a handgun without a license. Britt filed a motion to suppress, which the trial court denied after a hearing. The matter proceeded to a bench trial on February 19, 2013. At the conclusion of the evidence, the trial court found Britt guilty of possession of marijuana and took the carrying a handgun without a license charge under advisement. By order dated February 21, 2013, the trial court found Britt guilty of carrying a handgun without a license. On March 25, 2013, Britt was sentenced to an aggregate term of eighteen months suspended to probation. Britt now appeals.

On appeal, Britt argues that all evidence relating to the handgun and the marijuana should have been excluded as the products of an illegal search. Britt initially challenged the admission of evidence through a motion to suppress, and is now appealing its admission after a completed bench trial. Decisions concerning the admission or exclusion of evidence fall within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Palilonis v. State*, 970 N.E.2d 713 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it. *Id.* The ultimate determination of the constitutionality of a search or seizure, however, is reviewed de novo. *Woodson v. State*, 966 N.E.2d 135 (Ind. Ct. App. 2012), *trans. denied*.

As an initial matter, we note that Britt does not challenge the propriety of the original traffic stop based on an alleged violation of the city noise ordinance. *See Goens v. State*, 943 N.E.2d 829, 832 (Ind. Ct. App. 2011) (noting that "[i]t is well-settled that a police officer

4

may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation" (quoting *Datzek v. State*, 838 N.E.2d 1149, 1154 (Ind. Ct. App. 2005), *trans. denied*). Nor does he allege that his rights were violated when Officer Brooks asked him whether he had any weapons, instructed him to step out of the vehicle, patted him down for weapons, or conducted a canine sweep of the exterior of his vehicle. Instead, he argues that his rights under the Fourth Amendment to the U.S. Constitution were violated when Officer Brooks, after being informed of the handgun's location, opened the center console and removed it. According to Britt, at that moment, the officers lacked reasonable suspicion or probable cause to believe that Britt was committing the crime of carrying a handgun without a license because they had not yet been informed that he had been denied a license to carry a handgun in Michigan. Moreover, Britt argues that all threats to officer safety attributable to the presence of the handgun had been neutralized because Britt had been removed from the vehicle and patted down and was cooperative with the officers. Finally, Britt argues that the marijuana discovered during the inventory search was inadmissible as fruit of the poisonous tree.[4]

We need not address Britt's argument in this regard. Even if we assume that Officer Brooks's act of securing the handgun upon being informed of its location was somehow improper, the inevitable discovery exception to the exclusionary rule "permits the introduction of evidence that eventually would have been located had there been no error, for [in] that instance 'there is no nexus sufficient to provide a taint.'" *Schultz v. State*, 742

---

[4] Britt makes no independent argument concerning the legality of the inventory search of his vehicle.

N.E.2d 961, 965 (Ind. Ct. App. 2001) (quoting *Banks v. State*, 681 N.E.2d 235, 239 (Ind. Ct. App. 1997)). Here, although the officers were not yet aware that Britt had been denied a license to carry a handgun in Michigan at the time Officer Brooks removed the handgun from the center console, Corporal Rucker independently obtained that information from dispatch minutes later, while the stop was still in progress. As a result, the officers had probable cause to believe that Britt was committing the crime of carrying a handgun without a license and therefore to seize the handgun. *See State v. Hobbs*, 933 N.E.2d 1281 (Ind. 2010) (noting that the automobile exception to the warrant requirement allows police to conduct a warrantless search of a vehicle if they have probable cause to believe evidence of a crime will be found therein). Put another way, the handgun would have been located and seized minutes later even if Officer Brooks had not retrieved the gun immediately after being informed of its location, and Britt's arrest and the inventory search of his vehicle would have followed. Accordingly, the evidence in this case falls within the inevitable discovery exception to the exclusionary rule and need not be suppressed under the Fourth Amendment.

Britt also argues that his rights under article 1, section 11 of the Indiana Constitution were violated when Officer Brooks retrieved the handgun from the center console.[5] The cases Britt cites in his analysis of the state constitutional issue, however, address claims under the Fourth Amendment only. *See Holly v. State*, 918 N.E.2d 323, 325 n.2 (Ind. 2009) (finding it "unnecessary to resolve" the defendant's article 1, section 11 claim in light of the

---

[5] The inevitable discovery exception to the exclusionary rule has not been adopted as a matter of Indiana constitutional law. *Ammons v. State*, 770 N.E.2d 927 (Ind. Ct. App. 2002), *trans. denied*.

Court's conclusion that the search violated the defendant's Fourth Amendment rights); *Woodson v. State*, 960 N.E.2d 224 (Ind. Ct. App. 2012) (mentioning both the federal and state constitutions, but resolving the case based solely on a Fourth Amendment analysis). Britt also briefly cites *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005) for the general proposition that the article 1, section 11 inquiry focuses on the reasonableness of the search under the totality of the circumstances. Britt does not, however, cite the three-factor balancing test enunciated in that case or make any attempt to apply it. *See Litchfield v. State*, 824 N.E.2d 356. Instead, Britt cites the Fourth Amendment reasonable suspicion standard applicable to investigative stops. *See Terry v. Ohio*, 392 U.S. 1 (1968). Because Britt has not developed any argument supporting a separate analysis under article 1, section 11, he has waived his state constitutional claim. *See Patterson v. State*, 958 N.E.2d 478 (Ind. Ct. App. 2011).

Waiver notwithstanding, we find no violation of article 1, section 11 here. As set forth above, the validity of a search under article 1, section 11 of the Indiana Constitution turns on an evaluation of the reasonableness of the officer's conduct under the totality of the circumstances. *Temperly v. State*, 933 N.E.2d 558 (Ind. Ct. App. 2010), *trans. denied*, *cert. denied*, 132 S. Ct. 496 (2011). In evaluating the reasonableness of a search, we must balance: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* at 564 (*quoting Litchfield v. State*, 824 N.E.2d at 361).

In this case, even if we assume the degree of concern or suspicion that a violation had occurred was low, the remaining two factors tip strongly in favor of upholding the search. The degree of intrusion here was low. Officer Brooks did not conduct a full search of the vehicle; instead, he merely opened the center console to retrieve the handgun after Britt informed him of its location. Moreover, law enforcement needs were great. At the time Officer Brooks seized the handgun, Britt was located fifteen feet away from the vehicle and he was not handcuffed or in any way restrained. It was therefore necessary for Officer Brooks to secure the weapon to ensure officer safety. Under these facts and circumstances, we can readily conclude that Officer Brooks's actions were reasonable for purposes of article 1, section 11 of the Indiana Constitution.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.