

FILED

Apr 10 2018, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lloyd P. Mullen
Mullen & Associates PC
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Heath Poortenga,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 10, 2018<br><br>Court of Appeals Case No.<br>45A03-1709-CR-2148<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Julie Cantrell,<br>Judge<br>The Honorable R. Jeffrey Boling,<br>Commissioner<br><br>Trial Court Cause No.<br>45D09-1607-CM-648 |

**Bradford, Judge.**

# Case Summary

[1]     Appellant-Defendant Heath Poortenga was charged with and found guilty of both Class C misdemeanor and Class A misdemeanor operating while intoxicated ("OWI"). Following trial, the trial court dismissed the Class C misdemeanor OWI conviction as a lesser-included offense of the Class A misdemeanor conviction. Poortenga challenges his conviction for Class A misdemeanor OWI on appeal. In challenging his conviction, Poortenga raises multiple issues, one of which we find dispositive. Specifically, we conclude that the trial court abused its discretion in admonishing the jury during defense counsel's closing argument to ignore evidence that Poortenga's alcohol concentrate equivalent ("ACE") was under the legal limit at the time of his arrest. We also conclude that retrial is appropriate on the Class C misdemeanor charge but not the Class A misdemeanor charge. As such, we reverse and remand to the trial court for further proceedings consistent with this memorandum decision.

# Facts and Procedural History

[2]     At approximately 3:00 a.m. on July 10, 2016, Officer Kevin Fertig of the police division of the Lake County Sheriff's Department was on patrol in the area around 141st Street in Lake County. While on patrol, Officer Fertig passed a red Chevy Aveo that had a headlight out. Officer Fertig looked in his rearview mirror and noticed that the license plate was not illuminated. In light of these violations, Officer Fertig decided to initiate a traffic stop. Immediately after

Officer Fertig activated his emergency lights, Poortenga applied his brakes and began pulling over to the side of the road. However, Poortenga did not immediately stop his vehicle, but rather continued for the equivalent of "another couple of blocks" before stopping. Trial Tr. p. 49.

[3] When Officer Fertig approached Poortenga's vehicle, he observed that Poortenga appeared to have trouble locating his driver's license. He was "speaking very slow" and his "eyes were pretty glossy." Trial Tr. p. 52. Officer Fertig also noticed the smell of alcohol emanating from the vehicle. Poortenga later admitted that throughout the course of the evening, he had "three Jack-and-Cokes" at the Safe House Bar in Crown Point. Trial Tr. p. 55. Poortenga also told Officer Fertig that "I don't usually drink a lot so I might have a low tolerance." Trial Tr. p. 56.

[4] Poortenga complied with Officer Fertig's request that he exit the vehicle and calmly participated in three different field sobriety tests—the Horizontal Gaze Nystagmus test, the walk and turn test, and the one-leg stand test—all of which he failed. Given his observations and Poortenga's inability to successfully complete the field sobriety tests, Officer Fertig formed the opinion that Poortenga was intoxicated. After Officer Fertig read Poortenga the implied consent advisement, Poortenga agreed to submit to a chemical test.

[5] Officer Fertig then handcuffed Poortenga's hands behind his back and placed him in the backseat of his police vehicle. At some point on the way to the jail, Poortenga, who suffers from motion sickness, vomited. Once at the station,

another officer administered a chemical breath test. The results of this test indicated that at the time of his arrest, Poortenga had an ACE of 0.069. Poortenga was then placed under arrest.

[6] On July 10, 2016, Appellee-Plaintiff the State of Indiana ("the State") charged Poortenga with Class C misdemeanor OWI and Class A misdemeanor OWI. Poortenga was also alleged to have committed the infraction of operating a vehicle with improper headlights.

[7] A jury trial commenced on June 23, 2017. During both opening statement and closing argument, Poortenga's counsel pointed to the fact that Poortenga tested below the legal limit in support of Poortenga's claim that he was not intoxicated at the time he was stopped by Officer Fertig. The State objected to defense counsel's statements during opening statement, after which the trial court admonished the jury on the nature of opening statements. The State also objected to defense counsel's statements during closing argument, after which the trial court admonished the jury as follows: "Do not put any consideration into a - - a .08 that the defense keeps bringing up. That has - - That is not part of this case. Do not put any weight into that." Trial Tr. p. 169. The jury subsequently found Poortenga guilty as charged.

[8] On August 21, 2017, the trial court sentenced Poortenga on the Class A misdemeanor conviction to "365 days in the Lake County Jail, all to be suspended; Probation for a period of 12 months; Community Service for 40 hours; Alcohol/Drug Abuse counseling at Court/State approved program;

[and] License suspension for 90 days retroactive to date of arrest (time served)[.]" Appellant's App. Vol. II, p. 25. The trial court also dismissed the Class C misdemeanor charge as a lesser-included offense of the Class A misdemeanor conviction. This appeal follows.

# Discussion and Decision

## I. Admonishment of the Jury

Poortenga contends that the trial court abused its discretion in admonishing the jury.[1] Specifically, Poortenga argues that the trial court abused its discretion by instructing the jury during both the defense's opening statement and closing argument that it should not consider evidence indicating that Poortenga's ACE registered under the legal limit because such evidence was irrelevant to whether he was intoxicated at the time he operated his vehicle.

### A. Relevance of Evidence at Issue

"Evidence is relevant when it has 'any tendency' to prove or disprove a consequential fact." *Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017) (quoting *Escamilla v. Shiel Sexton Co., Inc.*, 73 N.E.3d 663, 668 (Ind. 2017)). "This 'liberal standard for relevancy' sets a low bar." *Id*. (quoting *Escamilla*, 73 N.E.3d at

---

[1] The State contends that Poortenga has waived this argument for failing to provide a standard of review and to develop a cogent argument under Indiana Appellate Rule 46(A)(8)(a). We do not agree as we can clearly discern his contention from the language used, and he included citation to authority setting forth the applicable standard of review. We therefore reject the State's waiver argument and reach the merits of Poortenga's claim.

670). "[T]he trial court enjoys 'wide discretion' in deciding whether that bar is cleared." *Id*. (quoting *Hicks v. State*, 690 N.E.2d 215, 220 (Ind. 1997)). Relevant evidence is admissible unless any applicable rule or statute provides otherwise. *See* Ind. Evid. Rule 402.

[11] "'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation the person had an [ACE of] at least eight-hundredths (0.08) gram of alcohol per … two hundred ten (210) liters of the person's breath." Ind. Code § 9-13-2-131. Thus, evidence relating to an individual's ACE is certainly relevant to prove intoxication when the individual's ACE is at least 0.08. It would seem unjust to limit relevance of one's ACE to only cases when the individual's ACE is found to be 0.08 or more. Further, we have previously noted that once an individual has consented to a chemical test, he may not then object to the results of the chemical test being used against him. *See Temperly v. State*, 933 N.E.2d 558, 566 (Ind. Ct. App. 2010). It seems the reverse should also be true that the State may not complain if a defendant who tested below the legal limit attempts to introduce that fact in an effort to discredit the State's claim that he was intoxicated.

[12] For these reasons, we conclude that evidence of an individual's ACE is relevant to the question of whether the individual was intoxicated, regardless of whether the individual's ACE was more or less than 0.08. In reaching this conclusion, however, we do not intend to suggest that a finding that an individual's ACE is under the legal limit of 0.08 per se proves that the individual was not

intoxicated. Rather, we merely conclude that such a fact is evidence that may be considered when determining whether an individual was intoxicated.

## B. Admonishments Given by the Trial Court

[13] It is undisputed that at the time of his arrest, Poortenga's ACE was 0.069. Having concluded that this evidence was relevant, we turn our attention to the admonishments made by the trial court.

### 1. Opening Statement

[14] During its opening statement, the State argued that the jury could find Poortenga guilty, despite his ACE being under the legal limit, if it found that the other evidence proved beyond a reasonable doubt that he was intoxicated. In making this statement, the State acknowledged that the jury should find Poortenga not guilty if they found the fact that his ACE was under the legal limit to be more compelling than the other evidence suggesting intoxication. After the State concluded its statement, the defense presented its opening statement. During this statement, defense counsel stated the following: "Ladies and gentlemen, the evidence will show that they took him to the station and he blew 0.069, substantially below the legal limit where you're presumed to be intoxicated in Indiana, that's .08. We've all seen those…." Trial Tr. p. 37. At this point, the State objected and a bench conference was held out of the presence of the jury. At the conclusion of this bench conference, the trial court admonished the jury as follows:

> All right. What you're hearing now are opening statements.
> This is not the law. I will instruct you on what the law is later.
> Everything you hear now here is opening statements. So don't
> form any opinions of what the law is at this point. I will instruct
> you on that later…. Okay, [defense counsel], you can proceed.

Trial Tr. pp. 41–42. Defense counsel was then permitted to continue on with his statement that the State's case was not based on scientific evidence of intoxication, but rather solely on the arresting officer's opinion that Poortenga was intoxicated.

[15] Upon review, we conclude that the trial court's admonishment to the jury regarding the nature of opening statements was accurate. Nothing in the trial court's admonishment suggested that the jury could not consider the fact that Poortenga's ACE was under the legal limit when determining whether he was intoxicated at the time of his arrest. As such, the trial court did not abuse its discretion in giving this admonishment to the jury.

### 2. Closing Argument

[16] During closing argument, defense counsel stated "[t]he evidence is, ladies and gentlemen, he was not drunk. He was not over .08. He was not acting…[.]" Trial Tr. p. 167. At this point, the State interrupted defense counsel and requested permission to approach the bench. Following a bench conference conducted outside the presence of the jury, the trial court admonished the jury as follows: "Do not put any consideration into a - - a .08 that the defense keeps bringing up. That has - - That is not part of this case. Do not put any weight into that." Trial Tr. p. 169. Defense counsel was then permitted to continue on

with his argument that the State's case against Poortenga was not based on scientific evidence but rather the observations of "a very mad officer who got his car thrown up in and [who] didn't get his first OWI arrest[.]"[2] Trial Tr. p. 169.

[17] A trial court will be found to have abused its discretion when its decision "is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Rice v. State*, 6 N.E.3d 940, 943 (Ind. 2014) (internal quotation omitted). By instructing the jury not to consider the evidence that Poortenga's ACE was under the legal limit of 0.08, the trial court admonished the jury to ignore relevant evidence. Nothing in the record suggests that the probative value of this evidence was substantially outweighed by any prejudicial effect it may have on the jury, *see generally, Williams v. State*, 741 N.E.2d 1209, 1211 (Ind. 2001) (providing that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice), and evidence that Poortenga's ACE was 0.069 at the time of his arrest was admitted during trial with no objection. This evidence is relevant as to whether or not Poortenga was intoxicated at the time he operated his vehicle. We therefore conclude that the trial court's instruction to ignore relevant evidence and reasonable inferences that can be derived from that evidence amounts to an

---

[2] The record indicates that Officer Fertig was in training on the date in question and that his arrest of Poortenga was his first ever OWI arrest.

abuse of discretion as it was clearly against the logic and effect of the facts and circumstances before the court.

[18]     Further, the Indiana Supreme Court has held that "[o]n appeal, [appellate courts] must presume that the jury obeyed the trial court's instructions in reaching its verdict." *Webster v. State*, 413 N.E.2d 898, 901, 274 Ind. 668, 673 (1980). Thus, when the jury has been instructed not to consider specific evidence or argument, "we will assume that the jury followed the instructions." *Id.*, 274 Ind. at 673. Because we must assume that the jury followed the trial court's instruction and ignored the relevant evidence, we conclude that the trial court's abuse of discretion amounted to reversible error.

## II.  Whether Retrial is Appropriate

[19]     Having concluded that the trial court committed reversible error by admonishing the jury to ignore relevant evidence, we next consider whether the State may retry Poortenga on these charges. Because reversal in this case is due to trial error, "the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, generally does not bar a retrial on the same crimes." *Thompson v. State*, 690 N.E.2d 224, 237 (Ind. 1997) (citing *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988)) (footnote omitted).

> However, double jeopardy forbids a retrial … if the reviewing court concludes that the evidence is legally insufficient to support the conviction. *Champlain v. State*, 681 N.E.2d 696, 702 (Ind. 1997). Evidence is sufficient if the probative evidence and

reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Wooden v. State*, 657 N.E.2d 109, 111 (Ind. 1995). In this review, we do not reweigh evidence or assess the credibility of witnesses. *Id*.

*Id*.

[20] In order to support a conviction for Class A misdemeanor OWI, the State was required to prove that Poortenga operated a vehicle while intoxicated in a manner that endangered a person. Ind. Code § 9-30-5-2. Poortenga argues that the State failed to prove both that he was intoxicated and that he operated his vehicle in a manner which endangered a person.

## A. Intoxication

[21] "'Intoxicated' means under the influence of … alcohol … so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. "Impairment can be established by evidence of (1) the consumption of significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; (7) slurred speech." *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008) (citing *Fields v. State*, 888 N.E.2d 304, 307 (Ind. Ct. App. 2008)).

[22] It is undisputed that the State introduced evidence that (1) Poortenga had consumed some alcohol prior to his arrest, (2) his was "speaking very slow," (3) his eyes were "pretty glossy," (4) Officer Fertig smelled the odor of alcohol

emanating from his vehicle, and (5) he failed the field sobriety tests administered by Officer Fertig. Trial Tr. p. 52. This evidence may be legally sufficient to sustain a finding of intoxication. As such, the State may retry the Class C misdemeanor OWI charge without violating the Double Jeopardy Clause of the Fifth Amendment.

## B. Endangerment

[23] The State is required to present evidence beyond mere intoxication in order to prove the element of endangerment and support a conviction of OWI as a Class A misdemeanor. *Temperly*, 933 N.E.2d at 567. In *Temperly*, we concluded that although the State presented sufficient evidence to prove that the defendant was intoxicated, no evidence other than his intoxication was presented to suggest that he operated his vehicle in a manner that endangered himself or any other person. 933 N.E.2d at 568. As such, we reversed the defendant's conviction for Class A misdemeanor OWI because "insufficient evidence was presented that [the defendant] operated his vehicle while intoxicated in a manner that endangered a person." *Id*.

[24] In this case, Officer Fertig initiated a traffic stop after noticing that Poortenga had a headlight out and that his license plate was not illuminated in accordance with state law. Officer Fertig acknowledged that he did not observe Poortenga commit any moving violations prior to initiating the stop. Poortenga was not swerving or driving too fast and he did not come close to "hitting any object, thing, or person." Trial Tr. p. 97. Officer Fertig's testimony established that Poortenga applied his brakes immediately after he initiated his emergency lights

and began pulling over to the side of the road. However, Poortenga did not immediately stop his vehicle, but rather continued for the equivalent of "another couple of blocks" before stopping. Trial Tr. p. 49.

[25] The only additional evidence beyond the evidence of intoxication relied on by the State to prove endangerment is the evidence indicating that Poortenga did not immediately stop his vehicle after Officer Fertig activated his emergency lights. The State, however, does not point to any authority suggesting that a failure to stop immediately after an officer activates his emergency lights is sufficient, without more, to prove endangerment. In fact, applicable authority provides otherwise. *See Outlaw v. State*, 918 N.E.2d 379, 382 n.2 (Ind. Ct. App. 2009), *adopted and incorporated by reference by* 929 N.E.2d 196 (Ind. 2010) (providing that the defendant's slow response to the officer's activation of his emergency lights was "not equivalent to dangerous driving" and therefore was not sufficient evidence of endangerment). As such, we conclude that the evidence presented by the State is legally insufficient to sustain a finding of endangerment. We also conclude, therefore, that the State may not retry the Class A misdemeanor endangerment charge. *See Thompson*, 690 N.E.2d at 237 (citing *Champlain*, 681 N.E.2d at 702).

## Conclusion

[26] We conclude that the trial court abused its discretion and committed reversible error by admonishing the jury to ignore the relevant evidence that Poortenga's ACE was under the legal limit of 0.08. We also conclude that the evidence is

such that the jury could find that Poortenga was intoxicated at the time of his arrest but not that he endangered a person. As such, if it so wishes, the State may elect to retry Poortenga on the Class C misdemeanor OWI charge but not the Class A misdemeanor OWI charge.

[27] The judgment of the trial court is reversed and remanded with instructions.

Baker, J., and Kirsch, J., concur.