FILED

Dec 18 2020, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Dylan A. Vigh
Law Offices of Dylan A. Vigh, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jesse R. Bunnell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 18, 2020<br><br>Court of Appeals Case No.<br>20A-CR-981<br><br>Interlocutory Appeal from the<br>Greene Superior Court<br><br>The Honorable Dena A. Martin,<br>Judge<br><br>Trial Court Cause No.<br>28D01-1804-F6-83 |

**Mathias, Judge.**

[1] In this interlocutory appeal, Jesse Bunnell challenges the Greene Superior Court's summary denial of his motion to suppress evidence allegedly obtained through an unlawful search and seizure of his home. On the unique facts of this case, we find that the search-warrant affidavit failed to provide the warrant-issuing judge with a substantial basis for its probable-cause determination.

Because there was no probable cause to issue the warrant, the search of Bunnell's home was unlawful.

[2] We reverse.

## Facts and Procedural History

[3] Jesse Bunnell rented a home where he lived with Amber Richardson and two children. On the afternoon of April 11, 2018, Alexandria Odell called the Greene County Sheriff's Department to request a welfare check at Bunnell's home. Odell told police that her fiancé, Ivan Stetter—who was deployed overseas at the time—was receiving text messages from Richardson indicating that she had been battered by Bunnell inside the residence.[1]

[4] Deputy David Elmore responded, and upon arriving at the home, he noticed a recreational vehicle (RV) and a jeep parked on the property. Deputy Elmore approached the front door and knocked multiple times, but no one answered. He then walked toward the back of the house. On the way, he noticed a cable running from one of the home's ground-level windows into the RV. He knocked on the RV, but no one answered. Deputy Elmore then continued to the back of the home where he noticed two doors: one on the ground level and one at the top of exterior stairs. He first knocked on the ground-level door, but again, no one answered. So, he proceeded up the exterior stairs to the other door.

---

[1] Richardson is Stetter's "child's mother." Appellant's App. p. 25.

[5] At the top of the stairs, Deputy Elmore made two observations. First, he noticed "an exterior security camera with wires going into the home through the door jam." Appellant's App. p. 16. Second, he observed "through [his] training and experience the smell of raw Marijuana emitting from the door." *Id.* Meanwhile, Deputy Christopher Anderson had arrived to assist; he also "advised through his training and experience [that] he smelled raw Marijuana . . . emitting from the door at the top of the exterior stairs." *Id.* Deputy Elmore knocked on this door as well, but no one answered.

[6] After knocking on the home's three doors, Deputy Elmore spoke with Richardson over the phone and confirmed that she and the children were safe at a domestic violence shelter. Deputy Elmore also advised dispatch that he was applying for a search warrant "due to the odor of raw Marijuana coming from the residence." *Id.* at 26. That warrant sought authorization to search the home, the RV, the jeep, and a detached garage for "any and all illegal substances and paraphernalia associated with illegal substances." *Id.* at 15–16.

[7] About eight minutes after submitting the search-warrant affidavit, a judge signed off on the warrant but limited its scope to the house. *Id.* at 17–18. Inside, officers found approximately nine pounds of marijuana, multiple marijuana plants (in the basement), smoking pipes, syringes, and other drug paraphernalia. Deputy Elmore subsequently applied for and was granted a search warrant for the RV, where he found additional marijuana. As a result, the State charged Bunnell with one count each of Level 6 felony dealing in marijuana, Level 6

felony possession of marijuana, Level 6 felony maintaining a common nuisance, and Class C misdemeanor possession of paraphernalia.

[8] Bunnell filed a motion to suppress the evidence recovered from the home and RV alleging that the search and seizure violated both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. More specifically, Bunnell made two claims: (1) the exterior stairwell and upstairs door "were not the normal means of entry-or-exit to and from" the home, and thus Deputy Elmore's detection of marijuana "within this area" constituted a warrantless search, *id.* at 36–39; and (2) the search warrant was not supported by probable cause because there was no evidence that the officers had "the requisite training and experience in detecting the odor of raw marijuana emanating from a [h]ome," *id.* at 39–42.

[9] After a hearing, the trial court summarily denied Bunnell's motion. Burnell filed a motion requesting the trial court to certify its denial for interlocutory appeal, which the court granted. This court then accepted jurisdiction over the appeal.

## Discussion and Decision

[10] Bunnell presents several arguments on appeal, one of which we find dispositive: whether the initial search-warrant affidavit supplied the issuing judge with a substantial basis for concluding there was probable cause to search his home.[2]

---

[2] Because we find this argument dispositive, we do not address Bunnell's other contentions.

[11] Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require search warrants based on probable cause. U.S. Const. amend. IV; Ind. Const. art. 1, § 11. This constitutional requirement is codified in Indiana Code section 35-33-5-2, which specifies the information that must be included in an affidavit supporting a search warrant. One requirement is that the affidavit set "forth the facts known to the affiant through personal knowledge . . . constituting the probable cause." I.C. § 35-33-5-2(a)(3).[3]

[12] In deciding whether there is probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In reviewing that decision, our job is to determine whether the affidavit provided the warrant-issuing judge with a "substantial basis" for finding probable case. *Id.* at 238–39 (citation omitted). And though we afford a probable-cause determination "great deference," *id.* at 236, it "is not boundless," *United States v. Leon*, 468 U.S. 897, 914 (1984). We must ensure that the judge "perform his neutral and detached function and not serve merely as a rubber stamp for the police." *Id.* (cleaned up). A warrant

---

[3] The State argues that Bunnell "has waived his claim that the deputies' discovery of the raw marijuana smell violated Article 1, Section 11 of the Indiana Constitution." Appellee's Br. at 20. We do not address this argument because we resolve the case on whether the search-warrant affidavit provided the warrant-issuing judge with a substantial basis for finding probable cause—the standard for applying Section 35-33-5-2. *See State v. Spillers*, 847 N.E.2d 949, 953 & n.3 (Ind. 2006).

issued without probable cause is invalid, and thus any subsequent search based on the warrant is illegal. *Heuring v. State*, 140 N.E.3d 270, 273 (Ind. 2020). Generally, under the exclusionary rule, any evidence obtained directly and derivatively from the illegal search must be suppressed. *Id.*

[13] Here, Bunnell argues that the initial search-warrant affidavit failed to provide the judge with a substantial basis for finding probable cause. More specifically, he notes that "the only evidence that supports" probable cause is the deputies' detection of the odor of raw marijuana, which was based on their "training and experience." Appellant's Br. at 20–21. But because there is no information about either deputies' relevant training or experience in detecting the odor of raw marijuana, Bunnell contends that the affidavit is insufficient to establish probable cause. He thus asserts that the seized evidence pursuant to both the initial search warrant and the subsequently issued warrant must be suppressed. The State disagrees, maintaining that "the odor of raw marijuana with an identifiable source justified the magistrate's initial probable-cause determination." Appellee's Br. at 13.[4]

---

[4] The State argues in the alternative that, even if the warrant was issued without probable cause, suppression is not required because the good-faith exception to the exclusionary rule applies. Appellee's Br. at 22–23; *see* I.C. § 35-37-4-5. Yet, as Bunnell points out, the State raised the exception's applicability for the first time on appeal: it did not file a memorandum in opposition to Bunnell's motion to suppress, and it did not advance an admissibility argument under the good-faith exception at the suppression hearing. Our supreme court has held that a party "is limited to the specific grounds argued to the trial court and cannot assert new bases for admissibility for the first time on appeal." *Taylor v. State*, 710 N.E.2d 921, 923 (Ind. 1999). Thus, because the State has raised the good-faith exception as a basis for admissibility for the first time on appeal, any argument regarding the exception's applicability is waived. *Moore v. State*, 872 N.E.2d 617, 621 n.2 (Ind. Ct. App. 2007) (citing *Merritt v. State*, 803 N.E.2d 257, 261 (Ind. Ct. App. 2004)), *trans. denied*; *see Darring v. State*, 101 N.E.3d

[14] On these unique facts and circumstances, we agree with Bunnell. To explain why, we address a narrow issue of first impression: whether law enforcement's detection of the odor of marijuana based on unspecified "training and experience" by itself provides a warrant-issuing judge with a substantial basis for concluding that probable cause exists to search a home.

A. *The odor of marijuana emanating from a residence may be sufficient by itself to establish probable cause for issuing a search warrant.*

[15] Over seventy years ago, the Supreme Court of the United States declared that "the presence of odors" can establish probable cause to issue a search warrant if two conditions are met: (1) the issuing judicial officer "finds the affiant qualified to know the odor"; and (2) the odor "is one sufficiently distinctive to identify a forbidden substance." *Johnson v. United States*, 333 U.S. 10, 13 (1948).

[16] In the years since *Johnson*, this court has consistently held, beginning with *State v. Hawkins*, 766 N.E.2d 749, 751–52 (Ind. Ct. App. 2002), *trans. denied*, that when a trained and experienced police officer detects the distinctive odor of a drug—such as raw or burnt marijuana—coming from a vehicle, the officer has probable cause to search that vehicle. *See Marcum v. State*, 843 N.E.2d 546, 548 (Ind. Ct. App. 2006); *see also Shorter v. State*, 144 N.E.3d 829, 838–39 (Ind. Ct. App. 2020) (detection of burnt synthetic drugs), *trans. denied*. Notably, however, in each of those decisions law enforcement's qualifications to detect the odor

263, 269 (Ind. Ct. App. 2018); *United States v. Lara*, 815 F.3d 605, 612–13 (9th Cir. 2016); *United States v. Wurie*, 728 F.3d 1, 13–14 (1st Cir. 2013); *United States v. Archibald*, 589 F.3d 289, 301 n.12 (6th Cir. 2009).

were either not contested, *Hawkins*, 766 N.E.2d at 752, or were sufficiently established, *Marcum*, 843 N.E.2d at 548; *Shorter*, 144 N.E.3d at 839. The same was not true in *State v. Holley*, 899 N.E.2d 31 (Ind. Ct. App. 2008), *trans. denied*.

[17] In *Holley*, officers pulled over a vehicle and subsequently searched it after detecting "the smell of raw marijuana emanating" from the occupants. *Id.* at 32. The trial court granted Holley's pretrial motion to suppress the evidence seized from the car. *Id.* at 33. On the State's appeal, we noted that—unlike in *Hawkins* or *Marcum*—"the qualifications of the officers" to detect the odor "were in issue." *Id.* at 35. And the lack of evidence for those qualifications was dispositive: "While there was evidence that [the officer] had encountered marijuana during the course of his duties, there was no evidence that he was qualified to know its odor or able to distinguish its odor from that of other substances." *Id.* Thus, because the search was without probable cause, we affirmed the trial court. *Id.*

[18] Yet, unlike the decisions cited above, this case involves probable cause to issue a search warrant for a residence. While we acknowledge that a warrantless search of a vehicle must be based on the same degree of probable cause that would otherwise be sufficient to issue a search warrant for a residence, *see California v. Carney*, 471 U.S. 386, 394 (1985), there are differences in who makes the probable-cause determination and how that decision is later reviewed, *see, e.g.*, 2 Wayne R. LaFave, *Search & Seizure* § 3.1(d) (6th ed. 2020). We thus find additional guidance from three Indiana cases that have addressed law enforcement's sense of smell and its impact on probable cause in this

context: *Johnson v. State*, 32 N.E.3d 1173 (Ind. Ct. App. 2015), *trans. denied*; *Darring v. State*, 101 N.E.3d 263 (Ind. Ct. App. 2018); and *Ogburn v. State*, 53 N.E.3d 464 (Ind. Ct. App. 2016), *trans. denied.*

[19] In *Johnson* and *Darring*, this court found that search-warrant affidavits, each of which included information about law enforcement's detection of the odor of marijuana, established probable cause to issue a search warrant for a home. *Johnson*, 32 N.E.3d at 1177–78; *Darring*, 101 N.E.3d at 269–70. Importantly, however, the detection of marijuana in each case only supported the probable-cause determination: the affidavits included additional evidence to establish probable cause. For example, the affidavit in *Johnson* contained "information that illegal drug activity was taking place" at the residence. 32 N.E.3d at 1177. And in *Darring*, the affidavit indicated that officers found two marijuana plants by the homeowner's shed, and it also included incriminating information from a neighbor. 101 N.E.3d at 266, 269–70. Further, the affiant–officer listed the relevant training and experience of the law-enforcement officials who detected the odor of marijuana. *Id.* at 266.

[20] In *Ogburn*, on the other hand, we held that an officer's detection of the "odor of burnt marijuana alone" did not establish probable cause to search an apartment for evidence of dealing in controlled substances. 53 N.E.3d at 472–73. The panel reached this conclusion after making three observations: (1) there was no reported drug activity at the apartment; (2) no one had spoken with anyone at the apartment who appeared under the influence of marijuana; and (3) the

affiant–officer failed to explain why he believed the odor emanated from Ogburn's apartment, rather than a neighbor's apartment. *Id.* at 473.

[21] Read together, these decisions demonstrate that, while law enforcement's detection of the odor of marijuana can provide sufficient probable cause for a search, there is no per se rule giving police carte blanche authority to search—with or without a warrant—based solely on the odor. Like in *Johnson* and *Darring*, the odor coupled with other evidence may establish probable cause. Or like in *Holley* and *Ogburn*, there may be circumstances that undermine the otherwise strong inference of implied criminal activity—such as a lack of information about law enforcement's relevant training or experience in identifying and distinguishing a particular odor*, Holley*, 899 N.E.2d at 35; *see Edwards v. State*, 832 N.E.2d 1072, 1080 n.11 (Ind. Ct. App. 2005) (recognizing that that detection of the smell of marijuana must be "by a trained and experienced police officer" to "support probable cause"); *cf. Neuhoff v. State,* 708 N.E.2d 889, 891 (Ind. Ct. App. 1999) (finding that a drug-sniffing dog's alert "was sufficient in itself" to establish probable cause when the search-warrant affidavit detailed the dog's relevant qualifications, experience, and training); *Rios v. State*, 762 N.E.2d 153, 159–60 (Ind. Ct. App. 2002) (same); *Hoop v. State,* 909 N.E.2d 463, 471 n.7 (Ind. Ct. App. 2009) (same), *trans. denied*. And this lack of information is particularly concerning in cases where detection of an odor is the only information in the affidavit "constituting probable cause." I.C. § 35-33-5-2(c).

[22] In short, we recognize that the smell of marijuana emanating from a residence, when detected by law enforcement that is qualified to identify and distinguish the odor, by itself can establish probable cause for issuance of a search warrant.[5] But when the smell of marijuana is the **only** evidence constituting probable cause, the search-warrant affidavit—or information otherwise before the issuing judge—must include some information regarding the detecting officers' relevant qualifications, experience, or training in identifying and distinguishing the odor.[6]

[23] To conclude otherwise would sanction a categorical presumption that **every** law-enforcement official is adequately trained in detecting and distinguishing the smell of marijuana. But such a presumption would conflict with *Johnson*'s mandate that a warrant-issuing judge find the "affiant qualified to know the odor" to constitute probable cause, 333 U.S. at 13, which must "be decided based on the facts of each case," *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997). While we are mindful that search warrants should not be invalidated by

---

[5] Several decisions from other jurisdictions have reached a similar conclusion. *See Commonwealth v. Barr*, --- A.3d ----, 2020 WL 5742680, at *7 (Pa. Sep. 25, 2020); *State v. Hubbard*, 430 P.3d 956, 969 (Kan. 2018); *Tingey v. State*, 387 P.3d 1170, 1183 (Wyo. 2017); *State v. Watts*, 801 N.W.2d 845 (Iowa 2011) (collecting cases); *State v. Kazmierczak*, 771 S.E.2d 473, 478–79 (Ga. Ct. App. 2015) (collecting cases); *see also* LaFave, § 3.6(b) ("It appears to be generally accepted that the smell of marijuana in its raw form or when burning is sufficiently distinctive to come within the rule of the *Johnson* case.").

[6] We find support for this minimal requirement in decisions from this court, *see Holley*, 899 N.E.2d at 34–35; *Neuhoff*, 708 N.E.2d at 891, as well as decisions from other jurisdictions, *see Poolaw v. Marcantel*, 565 F.3d 721, 732 & n.10 (10th Cir. 2009); *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995); *United States v. Sweeney*, 688 F.2d 1131, 1137–38 (7th Cir. 1982); *United States v. Pond*, 523 F.2d 210, 212–13 (2d Cir. 1975); *Watts*, 801 N.W.2d at 855; *Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim. App. 2006); *State v. Moore*, 734 N.E.2d 804, 808 (Ohio 2000); *State v. Cole*, 906 P.2d 925, 941 (Wash. 1995); *Kazmierczak*, 771 S.E.2d at 478; *see also* LaFave, § 3.6(b).

interpreting affidavits "in a hypertechnical, rather than a commonsense, manner," we must also "conscientiously review the sufficiency of affidavits on which warrants are issued" to ensure probable cause is not "a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 236, 239. We believe our holding today strikes the appropriate balance.

[24] With these principles in hand, we now turn to the search-warrant affidavit here to determine whether it provided the issuing judge with a substantial basis for concluding that there was probable cause to search Bunnell's home.

*B. The affidavit does not demonstrate that the officers were qualified to identify and distinguish the odor of raw marijuana.*

[25] As noted above, a search-warrant affidavit must set "forth the facts known to the affiant through personal knowledge . . . constituting the probable cause." I.C. § 35-33-5-2(c). The purpose of this requirement is "to keep the state out of constitutionally protected areas until it has reason to believe that a specific crime has been or is being committed." *Berger v. New York*, 388 U.S. 41, 59 (1967).

[26] Here, the initial search warrant authorized law enforcement to search Bunnell's residence for "any and all illegal substances and paraphernalia associated with illegal substances." Appellant's App. p. 15. To establish probable cause that "illegal substances" would be found in Bunnell's home, Deputy Elmore's affidavit included the following facts:

> I am a Deputy with the Greene County Sheriff's Department.

….

> I [] observed through my training and experience the smell of raw Marijuana emitting from the [second-floor exterior] door.
>
> Deputy Christopher Anderson arrived on scene to assist me and advised through his training and experience he smelled raw Marijuana as well emitting from the door at the top of the exterior stairs.

*Id.* at 15–16.

[27] Thus, probable cause to search Bunnell's home must be established solely by the deputies' detection of the odor. [7] But the affidavit does not include any information regarding the deputies' relevant qualifications, experience, or training that demonstrates either deputy can identify or distinguish the smell of raw marijuana. [8] There is no information on how long either deputy had been in law enforcement. There is no information on either deputy's involvement in investigating marijuana offenses or in making marijuana-related arrests. And there is no information about specialized training that either deputy had

---

[7] Deputy Elmore also noted that, at the top of the stairs, he "observed an exterior security camera with wires going into the home through the door jam." Appellant's App. p. 16. We agree with the State that the presence of this camera "could support a reasonable inference that guests had used the backdoor in the past," Appellee's Br. at 19; yet we find no basis—and the State does not argue—that the presence of a home-security camera could also support a finding of probable cause that Bunnell's home contained "illegal substances."

[8] We acknowledge that, during the suppression hearing, the trial court heard information about the officers' specific training and experience in detecting the odor of raw marijuana. Our inquiry, however, is focused on whether the warrant-issuing judge had a substantial basis for concluding that probable cause existed—a determination that is made based on the information presented at the time the warrant is issued. *See, e.g., Heuring*, 140 N.E.3d at 273 (citing *Figert*, 140 N.E.3d at 830); *United States v. Rees*, 957 F.3d 761, 765–66 (7th Cir. 2020).

undergone in detecting the odor of raw marijuana. Simply put, the search-warrant affidavit is devoid of particular information or evidence from which the warrant-issuing judge could find that either Deputy Elmore or Deputy Anderson were "qualified to know the odor" of raw marijuana emanating from the second-floor door of Bunnell's residence. *Johnson*, 333 U.S. at 13; *see United States v. Ventresca*, 380 U.S. 102, 108–09 (1965) (observing that probable cause cannot "be made out by affidavits which are purely conclusory, stating only the affiant's . . . belief that probable cause exists without" providing detailed circumstances on which the belief is based).

[28]  We acknowledge that Deputy Elmore cites both his and Deputy Anderson's "training and experience" generally; and we give "due weight to inferences drawn from . . . local law enforcement officers," *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *See United States v. Floyd*, 740 F.3d 22, 35 (1st Cir. 2014) (recognizing that "a law enforcement officer's training and experience may yield insights that **support** a probable cause determination") (emphasis added). Yet, by not including any information about relevant training or experience—and with no other incriminating evidence or information from which to draw a reasonable inference of criminal activity—a judicial officer reviewing the affidavit must resort to multiple inferences, resulting in a tenuous rather than a substantial basis for finding probable cause. Indeed, if we were to conclude that unspecified "training and experience" alone provides the requisite substantial basis, we would be granting the three words talismanic qualities. *See State v. Benters*, 766 S.E.2d 593, 603 (N.C. 2014) (finding an affidavit "insufficient to

establish probable cause" when concluding otherwise would require "such a heavy reliance upon officers' training and experience"). And in doing so, we would be abdicating our role to ensure that warrant-issuing judges do "not serve merely as a rubber stamp for the police." *Ventresca*, 380 U.S. at 109. This we will not do.

[29] In sum, law enforcement's detection of the odor of raw marijuana emanating from Bunnell's second-floor door is the affidavit's sole basis for establish probable cause to search the home. Yet, the affidavit does not include any information about the deputies' relevant qualifications, experience, or training from which a warrant-issuing judicial officer could find either deputy qualified to identify or distinguish the odor of raw marijuana. Thus, the affidavit failed to provide the warrant-issuing judge with a substantial basis for its probable-cause determination. Because there was no probable cause to issue the warrant, the initial search of Bunnell's home was illegal, and the exclusionary rule requires suppression of the evidence seized. Further, "it was by exploitation of that illegality" that law enforcement secured a search warrant for Bunnell's RV. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). As a result, that evidence must also be suppressed. *See id.*

## Conclusion

[30] When probable cause for a search warrant is premised solely on law enforcement's detection of the odor of raw marijuana, the assertion must be based on more than personal belief: the affiant–officer must provide some information about the detecting officers' relevant "training" or "experience"

that led to the ultimate conclusion. The search-warrant affidavit here failed to include that information, and thus, the warrant-issuing judge did not have a substantial basis for its probable-cause determination. The search warrant was therefore invalid and the subsequent search illegal. As a result, the trial court erred when it summarily denied Bunnell's motion to suppress.

[31]    Reversed.

Altice, J., and Weissmann, J., concur.